## MINING COMPANY v. ANGLO-CALIFORNIAN BANK.

1. The laws of California, under which a mining company was organized, empower it "to enter into any obligations or contracts essential to the transaction of its ordinary affairs, or for the purposes for which it was created," and make it the duty of its board of directors to exert its corporate powers and to conduct and control its business and property. *Held*, 1. That, as incident to the general powers of the company, its board may borrow money for its purposes, and invest certain of its officers with authority to negotiate loans, execute notes, and sign checks drawn against its bank account. 2. That the fact that the board has invested them with such authority may be shown otherwise than by the official record of its proceedings.

2. Where, therefore, without objection by the board, checks so drawn have, for a long period, been signed by the president and secretary of the company, the bank has the right to assume that those officers are invested with authority to sign them.

3. On the day when the decision, in a suit then pending, declaring that certain persons acting as such board, pursuant to an election theretofore held, should be removed from office, was announced, they, at a later hour, met as the board, and adopted a resolution, pursuant to which the president and secretary executed, on behalf of the company, and in settlement of its overdrawn bank account, a note bearing interest at a rate allowed by the laws of the State only when the contract therefor is in writing. On the next day, that judgment was filed with, and recorded by, the clerk of the court. *Held*, that the persons being *de facto* directors, the note so executed is binding on the company.

ERROR to the Circuit Court of the United States for the District of California.

The facts are stated in the opinion of the court.

*Mr. J. Hubley Ashton* for the plaintiff in error.

*Mr. Samuel Shellabarger* and *Mr. Theodore Sutro*, contra.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error, a mining corporation, was organized under the laws of California on the twenty-second day of December, 1873. From that date until the 21st of June, 1877, its treasurer was the defendant in error, a banking corporation created under the laws of Great Britain, and doing business in the city of San Francisco. During that period the moneys of the mining company were, from time to time, deposited with its treasurer, and paid out upon checks signed by the president and secretary of the company. In addition, the

bank allowed the account of the company to be overdrawn upon like checks. Such overdraft, including proper allowance for interest, amounted, on the 21st of June, 1877, to $6,319.59.

On the day last named, at 11 o'clock A.M., in an action then pending in the District Court of the Nineteenth Judicial District of California, in and for the city and county of San Francisco, wherein certain stockholders of the mining company were plaintiffs, and Ignatz Steinhart, S. Heydenfeldt, P. N. Lilienthal, Otto Esche, F. N. Benjamin, and the mining company were defendants, — which action had been brought to remove those persons from office as directors of the mining company, — the court decided that the election under which they acted as directors was invalid and void, and that they should be ousted and removed. When that decision was announced, the findings of fact by the court, as well as its judgment in conformity with the decision, were reduced to writing and dated of that day. They were, however, not filed with the clerk of the court until June 22, 1877, upon which day he recorded the judgment.

In the afternoon of June 21, 1877, after the announcement of the decision, the individuals above named met as a board of directors of the mining company, when its president informed them that the account of the company with the bank, its treasurer, was overdrawn to the amount of $6,319.59, gold coin of the United States, and that the manager of the bank requested either the money or the note of the company. A resolution was thereupon adopted authorizing the president and secretary to execute, and they then did execute, in behalf of the company, a note for $7,500, payable in coin, and with interest thereon at the rate of one and a half per cent per month until paid. The note was intended to cover as well the amount overdrawn as anticipated advances. But no such advances were afterwards made.

When the foregoing resolution was passed, the persons participating in its adoption had notice of the decision announced by the court in manner and form as stated.

The present action is to recover from the company the amount of its overdraft. The complaint, framed in accordance

with the Code of Procedure of California, contains two paragraphs or counts: one, for $6,351.72 gold coin, on an account, as of June 26, 1877, for money lent by the bank to the company, and for money paid, laid out, and expended by the former to and for the use of the latter; the other, for a like amount, with interest, being the balance alleged to be due upon the note referred to, after deducting all just offsets, which note, it is averred, was given in consideration of the amount due the bank upon an account stated between the parties on the 21st of June, 1877.

The court gave judgment against the company for the amount of the overdraft, with interest at the rate specified in the note. And from that judgment the present writ of error is prosecuted.

We are all of opinion that the bank is entitled to recover the amount of the overdraft as shown by the checks signed by the president and secretary of the mining company.

Upon the board of directors of the mining company was imposed, by the laws of California (Civil Code, sect. 305), the duty of exerting its corporate powers, and of conducting and controlling its business and property. Among the powers which the company had (Civil Code, sect. 354) was the power " to enter into any obligations or contracts, essential to the transaction of its ordinary affairs, or for the purposes for which it was created." Necessarily, therefore, the board had authority not only to designate the banking institution in which the money of the company should be deposited, but to prescribe the mode in which, and the officers by whom, it should be withdrawn, from time to time, for the use of the company. It is equally clear that the board had, as incident to the general powers conferred by law upon the company, power to borrow money for the purposes of the corporation, and to invest certain officers with authority to negotiate loans, to execute notes, and to sign checks drawn against its bank account. And it is settled law that the existence of such authority in subordinate officers may, in the absence of express statutory prohibition, be shown otherwise than by the official record of the proceedings of the board. It may be established by proof of the course of business between the parties them-

selves; by the usages and practice which the company may have permitted to grow up in its business; and by the knowledge which the board, charged with the duty of controlling and conducting the transactions and property of the corporation, had, or must be presumed to have had, of the acts and doings of its subordinates in and about the affairs of the corporation. Since checks against the account of the mining company must, in the ordinary course of its banking business, have been signed by some officer or officers designated for that purpose, the bank had the right, in view of the long period during which the checks of that company were signed by its president and secretary, — without objection, so far as the record shows, upon the part of the company's board, — to assume that those officers had been invested, by the board, with authority to sign all checks drawn against the company's bank account. So long, therefore, as the mining company had money to its credit on the books of the bank, the latter, in the absence of notice that the president and secretary of the former had no authority to sign checks, was justified in honoring all checks signed by those officers. This much we do not understand counsel to dispute. Their contention, upon this branch of the case, relates mainly to the liability of the mining company for the amount of any overdraft checks signed by its president and secretary.

Touching that liability, we have to say that since the mining company had power, under its charter, to raise money in that mode, for use in its corporate business, and since an indebtedness thus created would, in the usual course of business, be evidenced by the checks of its president and secretary, the presumption should be indulged, not only that those officers, in making an overdraft, did not exceed their authority, but that the moneys thus obtained were paid over to or received by the company. But that is a mere presumption arising from the conduct of the parties, as well as from the general mode in which corporations organized for profit conduct their business. That presumption, if not, under the special circumstances of this case, conclusive, might have been overthrown by affirmative proof of want of authority, express or implied, in the president and secretary of the mining company to make over-

draft checks, and by proof that the company did not receive the money paid thereon by the bank. There is, however, no such proof in this case. The finding is entirely silent as to whether the company did not receive and use the money. And the finding that "no resolution or special authority of the defendant was shown authorizing its president and secretary, or either of them, to overdraw its account in bank," fairly interpreted, means nothing more than that no proof was made, either way, on that point. It does not necessarily imply that a resolution to that effect was not, in fact, passed, nor that such special authority was not, in effect, given. The meagre evidence upon which, according to the special finding, the case was tried below, is, we think, insufficient to overturn the presumptions which should be indulged in favor as well of the bank as of the integrity and fidelity of the officers of the mining company.

This conclusion would render it unnecessary to consider any other question in the case, did not the judgment of the court give interest upon the amount due the bank at the rate stipulated in the note. By the laws of California, unless there be an express contract in writing, fixing a different rate, interest is payable on all moneys at the rate of seven per cent per annum, on any instrument of writing, except a judgment, and on moneys lent, or due on any settlement of account, from the day on which the balance is ascertained, and on moneys received to the use of another and detained from him. The majority of the court are of opinion that the judgment for the amount of the overdraft, with interest at the agreed rate, must stand; this, because the decree of ouster against the persons who passed the resolution of June 21, 1877, did not take effect until the succeeding day when it was actually filed with the clerk and entered on the record; and because, in the language of Mr. Justice Field, who tried the case, the "parties ousted were officers *de facto*, holding under color of an election, having charge of the affairs of the company, and capable of binding it in all matters legitimately devolving upon directors of the company." *Anglo-Californian Bank* v. *Mahoney Mining Co.*, 5 Sawyer, 255, 258.

*Judgment affirmed.*