## PAGE and others *v.* FALL RIVER, W. & P. R. Co.

### (*Circuit Court, D. Rhode Island.* June 24, 1887.)

1. CORPORATION—CONTRACT OF TREASURER—LIABILITY.

The treasurer of a railroad corporation for several years had been in the habit of borrowing money on the notes of the corporation signed by himself as treasurer. Most of these notes were indorsed by one of the directors; some, by himself individually. The by-laws of the corporation did not confer such authority on the treasurer. In an action against the corporation, on an agreement signed in its behalf by the treasurer, whereby a loan obtained from a banking house took the form of a purchase of exchange on London, it appeared that railroad corporations were not in the habit of borrowing money in this mode, while on the other hand it was shown that banking houses which, like the plaintiff, had foreign capital to lend, were in the habit of lending it in this manner. *Held,* that the directors, by their course of conduct, had held out their treasurer to the public as the fiscal agent of the corporation, and as having authority to make and indorse notes for it; and that there was nothing in this transaction so unusual as to have put plaintiff on inquiry.

2. UNITED STATES CIRCUIT COURTS—JURISDICTION—DIVERSE CITIZENSHIP—CORPORATION OF TWO STATES.

Where plaintiff is a citizen of Massachusetts, and defendant a corporation created by the law of Rhode Island, as well as by the law of Massachusetts, the suit may be brought in the federal court for the Rhode Island district. For the purposes of the suit, defendant is to be deemed a citizen of Rhode Island.

At Law.

*Wm. W. Douglas* and *J. H. Benton, Jr.,* for plaintiffs.

*Wm. P. Sheffield,* for defendants.

COLT, J. This is an action of *assumpsit* for breach of contract. Jury trial having been waived, the case was tried by the court. It appears that C. T. Child was treasurer of the defendant corporation from February 10, 1866, to June 11, 1872, when he was removed by vote of the directors. On February 20, 1872, he bought of the plaintiffs, who were bankers in Boston, a bill of exchange drawn by them on Benson & Co., London, for £1,873, payable 60 days after sight, giving the following agreement:

"BOSTON, February 20, 1872.

"Received of Page, Richardson & Co., for acct. Fall River, Warren & Providence Railroad, their bill of exchange on Robert Benson & Co., of London, at sixty days' sight, as follows: No. 644, for eighteen hundred and seventy-three pounds stg., (say £1,873,) making eighteen hundred and seventy-three pounds stg., (£1,873;) and we hereby agree with said Page, Richardson & Co. to furnish them with sterling exchange, or its equivalent, satisfactory to them, for the said eighteen hundred and seventy-three pounds sterling, say 1,873, in season to meet the maturity of the said bills in London; paying the Bank of England interest, not under six per cent., and a commission of (1%) one per cent., payable in sterling exchange.

[Signed], "FALL RIVER, WARREN & PROV. RAILROAD CO.,
By C. T. CHILD, Treas."

This was afterwards renewed for 60 days, under a second and similar agreement.

The bill of exchange was sold by Child for value, and was accepted and paid by Benson & Co., who charged the amount to the plaintiffs in account. Suit is now brought against the defendant corporation on this contract. The case turns upon the question whether Child had any authority to bind the defendant. The plaintiffs insist that such authority is to be found in the by-laws of the corporation, or, if not, that Child had an implied authority to make such a contract, arising from the fact that it was his custom to borrow money by giving the notes of the company, signed by himself as treasurer, with the knowledge or acquiescence of the directors; and that, therefore, they held him out to the world as possessing such authority, and so bound the corporation. The by-laws of the corporation provide, among other things, that the treasurer "shall collect and receive all assessments, incomes, and moneys that may be due to the corporation, and disburse the same as the board of directors may order; he shall surrender notes and other promissory papers on payment thereof, and discharge such mortgages as may have been given securing the same; he shall keep a regular set of books, containing the accounts of the corporation, and of all its funds that may pass through his hands; *and shall lay before the directors monthly a written statement of all notes, drafts, promises, contracts, made, signed, indorsed, or surrendered by him,* an abstract of all moneys received and paid by him, and a statement of all property bought or sold, and of such other matters as the directors may deem important."

The fact that this by-law directs the treasurer to lay before the directors monthly a written statement of all notes, drafts, promises, and contracts signed or indorsed by him does not, I think, confer upon him the

authority to do these acts without their direction or approval. To confer such broad and general powers on the treasurer of a corporation is certainly unusual. The court should not hold that such authority is vested in a treasurer by implication from the language of a by-law, but the by-law should expressly give such authority, if it was intended to be so conferred.

The plaintiffs rest their case mainly on the ground of an implied authority on the part of the treasurer to make this contract, because, as they say, the defendant held him out to the world as its general fiscal agent, authorized to negotiate loans, borrow money, make notes, and manage its whole financial business. The legal principle relied upon by the plaintiffs is well stated in *Lester* v. *Webb*, 1 Allen, 34:

"The rule is well settled that if a corporation permit the treasurer to act as their general fiscal agent, and hold him out to the public as having the general authority implied from his official name and character, and by their silence and acquiescence suffer him to draw and accept drafts, and to indorse notes payable to the corporation, they are bound by his acts done within the scope of such implied authority."

See, also, *Merchants' Bank* v. *State Bank*, 10 Wall. 604; *Mining Co.* v. *Anglo-California Bank*, 104 U. S. 192.

In the present case the difficulty lies in the correct application of this legal principle to the facts before us. From 1867 down to about the time of his removal, Child was in the habit of borrowing money on the notes of the defendant corporation, signed by himself as treasurer. Most of these notes were indorsed by one of the directors; some were indorsed by him individually. These notes were discounted by the National Warren Bank, of Warren, Rhode Island, or through Dwight I. Brown & Co., bankers of Providence, who sold them to different banks in the state, and sometimes out of the state. There were put in evidence 41 of these notes, usually $5,000 each, the aggregate amount being nearly $200,000. It does not appear that the directors, as a board, ever authorized making these notes, or took any action in relation thereto. It was the custom of Child, who was also treasurer or trustee for several corporations, to deposit all money in his hands for them to the credit of his personal account at the Union Bank, Providence, and to pay the various obligations of these concerns with his personal checks, charging each one with what he paid on their account. There is no evidence that Child ever borrowed money by purchasing a bill of exchange, except the one now in controversy, or that any notes were made and negotiated other than those mentioned. Child had had personal dealings with the plaintiffs before, but it is admitted that the railroad company never had any.

Upon this state of facts two questions arise: Can it be fairly said that the directors, by their course of conduct, held Child out to the public as the fiscal agent of the corporation, having authority to make and indorse notes for the corporation? and, if so, was there anything so unusual in the present transaction as to have put the plaintiffs on their inquiry? I have no doubt that the directors, by allowing Child for sev-

eral years and for a large amount to sign notes for the corporation, most of which were sold to different banks in the state and some out of it,—some of the directors going so far in recognition of Child's authority as to indorse the notes,—conferred upon him, so far as the public is concerned, an implied power to borrow money, which the corporation cannot now dispute. As to the nature of this transaction, I am unable to conclude that it was of such an extraordinary character as to relieve the defendant. The defendant called several officers of different railroads, who testified that in their experience they never knew railroads to borrow money upon such contracts as this; also two presidents and one cashier of Boston banks were called, who testified, in substance, that to their knowledge such contracts were not an ordinary and usual method of borrowing money, and that they had never known of the loan of money on such contracts. On the other hand, the plaintiffs introduced evidence that at the time of this transaction the borrowing of money by means of sterling contracts similar to the one now in controversy was a usual and ordinary way of borrowing money in Boston among houses having foreign capital to loan, by persons not importers or requiring to use money abroad. It may be true that to ordinary bankers this way of borrowing money was unusual or unknown, but to bankers having control of foreign funds it seems to have been a common mode. To bankers like these plaintiffs there would be nothing unusual or calculated to excite suspicion for any one desiring a loan to apply to them, and for them to make it in such form as was most convenient to them at the time. There is no proof that Child suggested the form the loan should take. The inference rather would be that he applied to the plaintiffs, and they suggested the mode adopted. The fact that it was not customary for railroads to borrow money in this way was not sufficient to put the plaintiffs upon their guard, or to excite suspicion of irregularity. The plaintiffs were lenders of foreign money in the Boston market. They were applied to by one who was a customary borrower of home capital from other parties, and whose notes were bought by institutions not only in the state, but out of it. Why should they not loan their funds, under these circumstances, in a manner not unusual with them and bankers of their class? If the defendant had desired to restrict its treasurer to borrowing money from the Warren Bank, or through Brown & Co., or to the form of borrowing by promissory notes, it could have done so by formal and proper action on the part of the directors. In the absence of any such restriction, the defendant must be held liable. When the authority of the agent is left to be inferred by the public from powers usually exercised by the agent, it is enough if the transaction in question involves the same general powers, though applied to a new subject-matter. *Merchants' Bank* v. *State Bank, supra.* "It is not necessary, in order to constitute a general agent, that he should have done before an act the same *in specie* with that in question. If he has usually done things of the same general character and effect, and with the assent of his principals, that is enough." COWEN, J., in *Commercial Bank of Erie* v. *Norton,* 1 Hill, 501, 503.

The defendant raises the objection that the plaintiffs, citizens of Massachusetts, cannot sue in this court because the defendant is a corporation created by the laws of Massachusetts as well as Rhode Island. The supreme court have held this objection to be invalid in *Railway Co.* v. *Whitton,* 13 Wall. 270, 283. Mr. Justice FIELD, delivering the opinion of the court, says:

"But it is said, and here the objection to the jurisdiction arises, that the defendant is also a corporation under the laws of Illinois, and therefore is also a citizen of the same state with the plaintiff. The answer to this position is obvious. In Wisconsin the laws of Illinois have no operation. The defendant is a corporation, and as such a citizen of Wisconsin by the laws of that state. It is not, then, a corporation or a citizen of any other state. Being there sued, it can only be brought into court as a citizen of that state, whatever its *status* or citizenship may be elsewhere."

I am of opinion that judgment should be entered for the plaintiffs for the amount claimed, not exceeding the *ad damnum* of the writ; and it is so ordered.