WINSTED HOSIERY COMPANY *vs.* NEW BRITAIN KNIT-
TING COMPANY.

Third Judicial District, New Haven, June Term, 1897. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The secretary and treasurer of a manufacturing corporation agreed to sell
certain machinery constituting part of its plant, but the directors repu-
diated the contract, whereupon the purchaser replevied the machines.
It appeared from the finding that the sale was not authorized by any
vote of the corporation or of its directors, nor by the by-laws defining
the duties and powers of the secretary and treasurer; and that the
transaction in question was the first sale of the kind ever attempted
by any officer of the corporation. *Held* that upon these facts, as mat-
ter of law, the contract was unwarranted and passed no title in the
machines to the plaintiff.
A corporation may be estopped from denying the authority of an agent in
respect to acts in and about its affairs which it has knowingly permitted
him to do in its behalf; but such estoppel cannot extend to acts that
are clearly not of the character of those so permitted.
The judgment or ultimate conclusion of a court upon the special facts in
issue, as ascertained from the evidence and settled by the trier, is a
conclusion of law and, as such, reviewable by this court; and this is
equally true whether such facts are settled by a special verdict of a
jury or by a special finding of a judge.

[Argued June 15th—decided July 13th, 1897.]

ACTION of replevin to recover possession of certain ma-
chinery, brought to the court of Common Pleas for Litchfield
County and tried to the court, *Arthur D. Warner, J.;* facts
found and judgment rendered for the plaintiff, and appeal
by the defendant for alleged errors in the rulings of the court.
*Error, and judgment reversed.*

The following facts were found by the trial court:—

The plaintiff and defendant are each corporations en-
gaged in the manufacture of knit goods, the former in the
town of Winchester and the latter in the town of New Britain.
In September, 1892, the defendant had in its factory at New
Britain upwards of fifty knitting machines, known as Kilbourn
looms, purchased by them for the manufacture of knit goods,
and numbered consecutively from 1 up to 56. Said machines

weighed from ten to twelve hundred pounds, and were located in two adjoining rooms in the defendant's factory, and the six mentioned in the plaintiff's complaint were so situated with reference to the shafting that they could be connected therewith and set in operation, but none of said machines had for some time prior to said month of September been in actual use by the defendant company. On or about the 26th of September, 1892, E. W. Schultz, who was then the treasurer and one of the directors of the defendant, had an interview at Winchester with Edward B. Gaylord, the secretary and treasurer of the plaintiff, with reference to the sale of the said knitting machines. In that interview Mr. Schultz represented himself as the treasurer of the defendant, and stated that the directors of the defendant company had made up their minds to dispose of their Kilbourn knitting machines which they were not then using, and that he wished to sell the whole of said machines, 56 in number. He also stated that the defendant would be willing to sell part of said machines. The next day Mr. Gaylord went to the factory of the defendant at New Britain and again saw Mr. Schultz, and examined the Kilbourn machines, and after selecting six, numbered respectively 43, 44, 53, 54, 55, and 56, made a proposition in writing to the defendant as follows:

"Sept. 27th, 1892.

" MESSRS. NEW BRITAIN KNITTING CO. :

" Gentlemen :—We offer you $500 for the following machinery under the following conditions : 4 Kilbourn Drawer looms Nos. 53, 54, 55, 56 ; 2 Kilbourn Body looms Nos. 43, 44 ; 6 Kilbourn Seaming machines (our selection) ; 2 short pieces of shafting over above Drawer machines with pulleys that are on the same ; 6 wooden boxes to hold the work. We to furnish men to superintend the packing, you to furnish help, cartage and lumber for boxing and shipping. Terms cash when machines are shipped.

" Yours truly, THE WINSTED HOSIERY CO., E. B. GAYLORD, Sec'y.

" Accepted by New Britian Knitting Co.,
        "E. W. SCHULTZ, Tr."

Said proposition was then and there accepted, as appears thereon. Said six Kilbourn looms were then standing as before in defendant's factory. The six Seaming machines referred to in said proposition, were a part of thirty-six Seaming machines in another part of the defendant's factory, and thirteen of said Seaming machines were what was known as twenty-four gage, which was the gage of the six Kilbourn looms. These Seaming machines were in piles and were in different states of repair, some having been used more than others, and at the time said proposition was made no selection had been made by the plaintiff of any of said Seaming machines, but six of them were to be selected by the plaintiff at some future time. A man was to be furnished by the plaintiff to superintend the packing of all the property referred to in said proposition, and the labor and lumber for the boxing and shipping was to be furnished by the defendant company, which was to cart and deliver all the property to one of the freight depots in New Britain, and payment was to be made when the machines were shipped. When said proposition was signed by Mr. Gaylord, acting for the plaintiff, he reserved the privilege of writing to Mr. Schultz the next day, provided the plaintiff did not wish to carry out the contract, and on the following day, after returning to Winchester, Mr. Gaylord wrote the following letter:

"WINSTED, CONN.; Sept. 28th, 1892.

"MESSRS. NEW BRITAIN KNITTING CO.:

"Gentlemen:—We confirm the bargain which we made on the machinery yesterday, and will send our man within a few days to pack it up. Possibly we will send the man Friday of this week. Will advise you later just when.

"Yours very truly, E. B. GAYLORD, Secretary."

On Saturday, October 1st, the plaintiff sent a man to New Britain to superintend the packing of the property referred to in said proposition. The defendant company refused to allow the property to be packed, and on October 3d or 4th the plaintiff received the following letter from the defendant:

" NEW BRITAIN, CONN., 10/3, 1892.

" E. B. Gaylord, Esq.:—Dear Sir: Writer was out of town Thursday and Friday of last week and received your letters at about same time your men arrived to take down knitting machines. I had talked over the subject of Norfolk and New Brunswick machines with my directors some time since in an informal way, and we practically decided to dispose of the machines one way or another by October 1st, but it seems they have changed their minds and are now unwilling to dispose of any of the machines. This puts me in rather an awkward position, and I trust you will have no difficulty in securing the other machines referred to when here.

" Very truly yours, N. B. K. Co.

" E. W. SCHULTZ."

A day or two after the receipt of this letter Mr. Gaylord went to New Britian to see Mr. Schultz regarding the transaction between them, and Mr. Schultz would not allow the property to be moved. At the same time Mr. Gaylord, in behalf of the plaintiff, tendered Mr. Schultz $500, which was refused, and after returning to Winchester the plaintiff received the following letter:

" NEW BRITAIN, CONN., 10/8, 1892.

" E. B. Gaylord, Treas.: Dear Sir:—I have not been able to see all of the parties interested and will be able to give you a definite answer by Wednesday next, 12th inst.

" Very truly yours, N. B. K. Co.

" E. W. SCHULTZ, Treasurer."

On October 13th the plaintiff received this letter:

" NEW BRITAIN, CONN., 10/12, 1892.

" E. B. Gaylord, Esq.: Dear Sir:—At a meeting of the directors of this company, yesterday, it was voted that, ' In the opinion of the directors, it is inexpedient to sell any portion of the Kilbourn knitting machines at present.' I will therefore be unable to deliver the six machines.

" Yours truly, N. B. K. Co.,

" E. W. SCHULTZ, Treasurer."

On the 15th of October the complaint in this suit was issued, and on the 17th Mr. Gaylord went again to New Britain with his attorney, the sheriff, and an employé of the plaintiff, and made demand for all property referred to in the proposition, and upon being refused, proceeded to pack, box and remove the same. Parts of two days were occupied in the packing, boxing and removing the property to the depot, and all the material and labor were furnished by the plaintiff as well as the carting. The carting cost the plaintiff $16.88 and it paid about $8 for necessary lumber and a considerable sum for labor. The selection of the Seaming machines was made by the plaintiff on the day they were removed from the defendant's factory. After the service of the process the plaintiff wrote to the defendant, enclosing a check for $500, which was returned, on the ground that there had been no sale.

Mr. Schultz first became connected with the New Britain Knitting Co. in June, 1891, and held office for the first time on the 15th of January, 1892, when he became secretary and treasurer of said company and was also appointed director. On said day the other directors were James Talcot of New York, John B. Talcot, E. H. Davidson and V. B. Chamberlain, all of New Britain. On the 27th of September, 1892, Mr. Schultz was still the secretary and treasurer of the company and a director therein. The records of three meetings of the board of directors were admitted in evidence, but the only action taken which had any reference to a sale of machinery, was evidenced by the record of a meeting held on October 11th, 1892, pursuant to a call by the president, when " it was voted that in the opinion of the directors it is inexpedient to sell any portion of the Kilbourn knitting machines at present." The by-laws of the defendant provided that it should " be the duty of the secretary to make and keep a record of all the doings of the stockholders' and directors' meetings, countersign certificates of stock, and at each annual meeting, and at other times if required by the directors, make a full and detailed statement of the [condition of the] company, and discharge all other duties especially authorized by the di-

rectors or required by the by-laws of the company, and the act
or acts under which this company is organized. It shall be
the exclusive duty of the treasurer to receive and safely keep
the cash funds, notes and other evidences of debt, belonging
to the company; to keep a regular account of all funds and
disbursements of the same; and in the performance of the
business of the company, but for no other purpose, the treas-
urer may, in behalf of the company, make or indorse notes,
acceptances, checks and bills of exchange, and also perform
all other acts and duties specially required of such officer
by the act or acts before referred to, provided however that
in case of the absence of the treasurer from home or inability
to perform the duties aforesaid, then said duties may be per-
formed by the president or president pro tem." The plaintiff
had no knowledge or information of the votes passed at the
directors' meetings of the defendant company, nor of the said
by-laws, prior to or at the time of its demand for the several
machines mentioned in its proposition: It appeared from
the evidence introduced by the defendant that Mr. Schultz
had never sold any machines of the kind mentioned in the
above proposition before, and it did not appear that the de-
fendant or anybody acting in its behalf had ever sold any
such machines, and the present transaction was the first sale of
the kind that any officer of the company had ever attempted
to enter into. Mr. Schultz was accustomed to buy raw mate-
rials and supplies for manufacturing purposes and he, jointly
with one Mr. Bird, superintended the manufacturing carried
on by the defendant company; and Mr. Schultz had pur-
chased sewing machines and also attachments for other ma-
chines.

It appeared from the evidence introduced by the defend-
ant, that the president of the company, Mr. John B. Talcot,
disapproved of the transaction entered into by Mr. Schultz
with the plaintiff, when he was informed of it, which was
within a few days after September 27th, 1892. Mr. Schultz
represented to the plaintiff, and held himself out to it, as
being fully authorized to make the sale of said machines, and

the plaintiff knew nothing to the contrary, except such information as it derived from the several letters.

Upon the trial of said cause the defendant claimed, upon the foregoing facts: (1) That the alleged contract of sale purporting to be entered into by Mr. Schultz as treasurer, was not binding upon the defendant company, for want of authority in Mr. Schultz to make such contract, and that said contract was never ratified by the company. (2) That the alleged contract of sale was executory and not executed, and did not pass the title to the property mentioned therein, but at most was a contract upon which, in case of failure to perform, either party could only bring an action for damages against the one in default. (3) That when this suit was instituted the plaintiff was not the owner of the property mentioned in the complaint, nor was it entitled to the possession of the same. The court overruled said claims and rendered judgment in favor of the plaintiff to retain all said property, and the appeal assigned as error these rulings of the trial court.

*Frank L. Hungerford*, for the appellant (defendant).

The contract purporting to be entered into by Mr. Schultz was of no binding force upon the defendant. *Swazey* v. *Union Mfg. Co.*, 42 Conn. 559. The by-laws of the company conferred no authority upon the treasurer to make such a contract. It is not claimed that the vote of the directors appointing Mr. Schultz confers such authority. Neither the directors nor the corporation approved or acquiesced in the act which he attempted to perform; on the contrary, the directors expressly disapproved of it by vote. It does not help the plaintiff to show that one or more of the directors knew of the intended sale and either approved it or did not object to it. Directors of a corporation act as a body and not as individuals. They act as a board when met together to transact board business. 2 Cook on Corp., § 712; *Butler* v. *Cornwall Iron Co.*, 22 Conn. 358; *Perry* v. *Simpson Waterproof Mfg. Co.*, 37 id. 520; *Swazey* v. *Union Mfg. Co.*, *supra;* 2 Cook on Corp. Law, § 713a; *New Haven R. R.* v. *Hayden*, 107

Mass. 525; *Rice* v. *Peninsular Club*, 52 Mich. 87. The contract of sale was executory. 1 Benjamin on Sales, pp. 323, 359, 428–440 ; *Chapman* v. *Shepard*, 39 Conn. 413·; *Terry* v. *Wheeler*, 25 N. Y. 525 ; *Briggs* v. *Light Boat*, 7 Allen, 292; *Weld* v. *Came*, 98 Mass. 532. If the title did not pass upon the execution of the written instrument, as it clearly did not, it did not pass subsequently, and had not passed when the replevin complaint was issued. The New Britain company always refused to perform the contract. It never accepted the contract price. It never furnished the labor and material for boxing. It never carted and shipped the property. The six seaming machines were never selected until after the replevin process was issued.

*Samuel A. Herman* and *Wilbur G. Manchester*, for the appellee (plaintiff).

The contract—provided Mr. Schultz had authority and power to make it—is an absolute sale of the property in question. Gen. Stats., § 1367; *Bissell* v. *Balcom*, 39 N. Y. 279, 280 ; *Hayden* v. *Demets*, 53 id. 431; *Thorndike* v. *Bath*, 114 Mass. 116 ; *Phillip* v. *Moor*, 71 Me. 72, 81 ; *Wing* v. *Clark*, 24 id. 366, 372; *Hatch* v. *Standard Oil Co.*, 100 U. S. 124. Mr. Schultz had authority and power. The directors had authorized him. The letter dated October 3d, 1892, if that was all the evidence bearing on this point, is sufficient proof of that fact. The vote of October 11th, 1892, was after the transaction in question, and does not affect this case. It does not refer to the subject-matter. The defendant company had other Kilbourn knitting machines. The authority of Mr. Schultz does not depend upon the defendant's by-laws, or the recorded vote of its directors ; it is sufficient if he has been allowed to manage the affairs of the defendant with the knowledge and approval of its directors. *Swazey* v. *Union Mfg. Co.*, 42 Conn. 559 ; *Shoe and Leather Bank's Appeal*, 55 id. 494; *Union Mfg. Co.* v. *Pitkin*, 14 id. 187 ; *Stamford Bank* v. *Benedict*, 15 id. 445 ; *Wood* v. *Wiley Construction Co.*, 56 id. 96 ; *Lewis* v. *Hartford Silk Mfg. Co.*, ibid. 37, 38; *Hart* v. *Stone*, 30 id. 96 ; *Mining Co.* v. *Bank*,

104 U. S. 192. It is a question of fact whether Mr. Schultz had authority to make the contract or not. *Swazey* v. *Union Mfg. Co.*, 42 Conn. 559; *Lester* v. *Webb*, 1 Allen, 36; *Merchants' National Bank* v. *State National Bank*, 10 Wall. 604. The lower court has decided this question, and it is not reviewable by this court. When the subject-matter of the sale is part of an ascertained mass of uniform quality and value, no selection is required; and in this class of cases severance is not, as a matter of law, necessary in order to vest the legal title in the vendee to the part sold. The title may and will pass if such is the clear intention of the contracting parties, and if there is no other reason than want of separation to prevent the transfer of title. *Chapman* v. *Shepard*, 39 Conn. 421, and cases cited therein; Benjamin on Sales (1888), Bennett's notes, pp. 284, 287, 239, 240; *Kingman* v. *Holmquist*, 36 Kan. 738; *Riddle* v. *Varnum*, 20 Pick. 283; *Bethel Steam Mill Co.* v. *Brown*, 57 Me. 18.

HAMERSLEY, J. The plaintiff's ownership of the goods replevied depends on the validity of the contract in writing claimed to have been made between the parties and contained in the letter, dated September 27th, 1892, offering to purchase the goods, and the acceptance of that offer signed "New Britain Knitting Co., E. W. Schultz, Tr." The goods which were the subject of the contract were not articles sold by the defendant in the ordinary course of its business, but were machinery constituting a part of its manufacturing plant. Mr. Schultz was a servant of the defendant appointed by its directors. " The extent of his power to bind the corporation depends in part upon its by-laws, if any such there be, touching his office; in part upon the language of the vote of the directors appointing him, if any such appears of record; in part upon their knowledge and approval of, or the acquiescence of the corporation in, acts performed by him; and in part upon usages which may be shown to exist, controlling the matter." *Swazey* v. *Union Mfg. Co.*, 42 Conn. 556, 559. The trial court has found and made a part of the record all the facts from which authority to make the sale

in question can be inferred. These facts are: The sale was not authorized by any vote of the corporation or of the board of directors; it was not authorized by the by-laws which define the duties and powers of the treasurer and secretary, and was not authorized by any vote passed at the time of Mr. Schultz's appointment to these offices, or subsequently; Mr. Schultz, jointly with a Mr. Bird, superintended the manufacturing carried on by the defendant company, and was accustomed to buy raw materials and supplies for manufacturing purposes, and had purchased sewing machines and also attachments for other machinery.

It is certain that, as director merely, Mr. Schultz did not have the authority claimed. It is also clear that the corporation had not given such authority, unless it is implied by law from acquiescence by the corporation in the acts detailed as done in its behalf. The acts may be appropriate to the employment of Schultz in the ordinary course of business, but they are not such as involve or imply any authority to sell machinery constituting a part of the defendant's plant. Acquiescence in these acts is not acquiescence in the sale of such machinery, and it is expressly found "that Mr. Schultz had never sold any machines of the kind mentioned in the above proposition before, and it did not appear that the defendant, or anybody acting in its behalf, had ever sold any such machines, and the present transaction was the first sale of the kind that any officer of the company had ever attempted to enter into."

A corporation may be estopped from denying the authority of an agent in respect to acts in and about its affairs which it has knowingly permitted him to do in its behalf; *Shoe and Leather Bank's Appeal*, 55 Conn. 469, 494; *Mining Co.* v. *Anglo-Californian Bank*, 104 U. S. 192, 194; *Merchants' Bank* v. *State Bank*, 10 Wall. 604; but such estoppel cannot extend to acts that are clearly not of the character of those so permitted.

We think that the facts found by the trial court show that Mr. Schultz was not authorized to make the contract on behalf of the defendant, and show nothing on which a claim

of ratification can be based. The plaintiff, therefore, never had any property in the goods replevied.

A claim is made in the brief of plaintiff's counsel, that the question of authority is one of fact found by the trial court, and not reviewable.

The judgment or ultimate conclusion of a court upon the special facts in issue, as ascertained from the evidence and settled by the trier, is a conclusion of law, and as such reviewable by this court; and this is true whether such facts are settled by a special verdict of a jury or a special finding of a judge. *Hayden* v. *Allyn*, 55 Conn. 280, 289. Such conclusion by a judge may sometimes involve a subordinate conclusion determining a question which by the law defining trial by jury must, in such trial, be submitted to the jury as a question of fact; and so in its relation to jury trial has been called a question of fact. But when the law authorizes a trial of facts to the judge, a conclusion or inference from special facts found, clearly demanded by the rules and principles of law, does not cease to be a conclusion of law because an arbitrary rule protecting the rights of trial by jury gives to the jury a right to determine such conclusion as a question of fact; unless, indeed, the law authorizing a trial to the judge requires him to settle the facts in the same manner as if tried to a jury. The statute authorizing a trial to the judge, as phrased in the Revision of 1821, and preserved unchanged in succeeding revisions, seems to contain this restriction. The effect that might result from such language has, however, been modified by recent legislation. Practice Act (1879) §§ 22, 23, 24, 30, 33; General Statutes, § 1111; Public Acts of 1893, p. 318; Public Acts of 1895, pp. 493, 494. We think that the result of this legislation is, that in cases tried to the court the judge is now authorized, and upon request required, to find and state in a special finding the facts adjudicated by him in reaching his ultimate conclusion, including all specific facts which, when so adjudicated, must determine the nature of the ultimate conclusion and subordinate conclusions involved therein, by force of settled rules and principles of law. The judgment rendered on such an ad-

judication of facts is merely the voice of the law declaring the legal effect of the facts adjudicated.

There are some conclusions that must be stated and treated simply as facts, because they are impossible to be reached except as the personal conviction of the trier induced directly by the evidence; such as the conclusion of negligence under conditions so peculiar to the case on trial, that the particular duty of the person charged with negligence under these exceptional circumstances cannot be determined by any general rules of law, and must be ascertained by the trier in the exercise of his own reasonable judgment induced by all the testimony before him.

The conclusion in the case at bar is not of this nature; all the special facts having been adjudicated, the conclusion is determined by settled principles of law; and is therefore reviewable.

As the contract made by Schultz was not binding on the defendant, the questions as to the legal effect of such a contract, if binding, are not before us.

There is error in the judgment of the Court of Common Pleas, and it is reversed.

In this opinion the other judges concurred.