CHARLES ROESCH & SONS CO. et al. v. MUMFORD.

(Circuit Court of Appeals, Third Circuit. February 28, 1916.)

No. 1993.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞44—VALIDITY.

Where an insolvent made an assignment under general law for the benefit of his creditors, not following the remedies prescribed by the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544) or the general assignment act of the state of New Jersey (1 Comp. St. N. J. 1910, p. 114), such assignment is not binding on creditors until they assent thereto.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 173–197; Dec. Dig. ☞44.]

2. CORPORATIONS ☞399(1)—ACTS OF AGENTS—VALIDITY.

Where an agent of a corporation, acting within the scope of his apparent authority, accepted an assignment of a debtor made for the benefit of all creditors, the acceptance is binding on the corporation, under the principle that usual employment is evidence of the powers of an agent.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1588, 1605; Dec. Dig. ☞399(1).]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞44—ACCEPTANCE—VALIDITY.

Where a corporate creditor, the insolvent debtor having assigned his property in trust for creditors, signed a power of attorney authorizing the trustee to dispose of such property, it cannot, seven months thereafter, retract its assent and attach the debtor's property, on the ground that other creditors had not assented to the trustee's conveyance, for they might thereafter assent, and the trustee become entitled to sell.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 173–197; Dec. Dig. ☞44.]

4. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞342—ACCEPTANCE—EFFECT.

Though a debtor's assignment of his property in trust for the benefit of creditors was void, because not in accordance with statutory law, a creditor, having accepted the assignment, is precluded from thereafter questioning its validity.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 1042–1049; Dec. Dig. ☞342.]

5. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞193—ATTACHMENT OF PROPERTY—TITLE.

Where a debtor assigned his property in trust for the benefit of creditors, the assignment being valid, legal title passed to the trustee, and creditors could not thereafter, in a proceeding against the debtor, attach the property,

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 196, 594–601; Dec. Dig. ☞193.]

6. BANKRUPTCY ☞151—EFFECT ON ASSIGNMENT UNDER STATE LAWS—AUTHORITY OF TRUSTEE.

Where an insolvent debtor assigned his property in trust for the benefit of creditors, and later, difficulties arising over the assignment, filed a voluntary petition in bankruptcy, his trustee in bankruptcy had no greater rights to the property than the debtor, and so long as the trust for creditors was active, and the property could be disposed of by the trustee, the debtor's trustee in bankruptcy was not entitled thereto.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193, 239; Dec. Dig. ☞151.]

Appeal from the District Court of the United States for the District of New Jersey; William H. Hunt, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bill by Elwin C. Mumford, trustee in bankruptcy of Clifton C. Shinn, against Charles Roesch & Sons Company and others. From a decree for complainant, defendants appeal. Affirmed.

Bourgeois & Coulomb, of Atlantic City, N. J., for appellants.

S. Cameron Hinkle, of Atlantic City, N. J., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The questions on this appeal relate to the validity of a deed of trust in the nature of an assignment for the benefit of creditors, and to the validity of a judgment recovered by one of the creditors after assenting to the assignment.

Clifton C. Shinn, while insolvent, conveyed to Isaac Bacharach, by bill of sale and deed bearing date June 23, 1906, all of his personal and real property, "in trust * * * to sell, convey or otherwise dispose of the same in such manner as the creditors of the said party of the first part, Clifton C. Shinn, may elect." By separate deed, the wife of Shinn conveyed to Bacharach, upon the same trust, her inchoate right of dower in the real property conveyed by her husband.

It is conceded that Shinn was hopelessly insolvent, and that in the assignment for the benefit of his creditors, there was neither fraud nor preference.

Upon delivering the deed, Shinn addressed letters to all of his creditors informing them of his insolvency and of the assignment of his property for their benefit. These were followed by letters from Bacharach, calling a creditors' meeting. At that meeting, the creditors appointed a committee to cooperate with Bacharach in administering the trust, one of the members of which was Charles Roesch, Jr., vice-president and the sole representative at its Atlantic City branch of Charles Roesch & Sons Company, a corporation engaged in selling meats and provisions, with its principal office in the City of Philadelphia. The Roesch Company was a substantial creditor of Shinn. Acting with the committee of creditors, Bacharach proceeded to sell the real estate. His action was arrested, however, by a question raised by a title guaranty company as to his power to dispose of the property under the limitations of the trust, without the concurrence of all of Shinn's creditors. This question very naturally arose out of the character of the conveyances of Shinn and his wife to Bacharach, which, though conveying title to Bacharach, conferred upon him no power of sale. Thereupon Bacharach endeavored to procure from all of Shinn's creditors power to sell the property, by obtaining their signatures to an instrument which is termed a power of attorney. This instrument bears date July 13, 1906, and purports to be signed by all of the creditors, though in fact three or four did not sign it. Among the signatures to this instrument is that of Charles Roesch and Sons Company, affixed by Charles Roesch, Jr., its vice-president.

After the Roesch Company had signed the power of attorney and while the signatures of other creditors were being procured, the Roesch Company endeavored to repudiate its signature and to withdraw its representative from the creditors' committee.

Seven months after signing the power of attorney, the Roesch Company instituted an action against Shinn by foreign attachment, attached as property of Shinn all the property he had conveyed to Bacharach, and ultimately recovered judgment for $3,629.06. This judgment was sold by the trustee of the Roesch Company, which in the meantime had gone into bankruptcy, and was purchased by George Roesch, its president. Upon execution the property attached was sold to Carl Roesch, a nephew of George Roesch, for the sum of $350, delivery of the deed being stayed by this proceeding.

Throughout the attachment proceedings, Bacharach, the trustee, found himself hindered in the disposition of the property by lack of power to sell under the deed and incomplete power to sell under the power of attorney, as well as by the menace of the attachment proceedings of the Roesch Company. Shinn, having become a resident of Pennsylvania, endeavored to extricate his trustee and the property from this predicament by filing a voluntary petition in bankruptcy in the District Court of the United States for the Middle District of Pennsylvania, considerably more than four months after the attachment was laid, conceiving that by this procedure the title to the property would vest in his trustee in bankruptcy and that the property could be sold by him. But this was not so simple as it seemed, because of Bacharach's antecedent title under the deed and the intervening attachment proceedings by the Roesch Company. Thereupon Elwin C. Mumford, trustee in bankruptcy for Shinn, appealed to the court below for help, by filing the bill in this case, wherein he attacked the attachment proceedings and the sale thereunder, and prayed that the attachment be annulled and the judgment vacated; and that Bacharach, Shinn's trustee under the deed, be decreed to transfer and convey to him, Shinn's trustee in bankruptcy, the property, real and personal, remaining in his hands. To this bill certain of the defendants made answer, that the assignment was void because it did not conform with the general assignment act of the State of New Jersey; that the assignment purported to be for the benefit of all creditors, and that all creditors had not conferred upon Bacharach the power to sell which the deed contemplated should be conferred by them; that the signature of the Roesch Company to the power of attorney was not binding upon it for the two reasons, that it was unauthorized and was affixed to a void instrument, and, therefore, it was free to pursue the remedy for the collection of its debt that it afterwards adopted.

The District Court entered a decree holding the attachment void and restraining the defendants from further proceedings thereunder, and ordering Bacharach, trustee under the deed, to convey to Mumford, trustee in bankruptcy, such of the property conveyed to him for the benefit of Shinn's creditors "as remains in his hands *after executing the trust* imposed under the deed to him as trustee." This is an appeal from that decree.

The questions involved are so related that it is difficult to present and discuss them separately. The underlying question is whether the property attached belonged to Shinn or Bacharach, trustee, at the time of the attachment. This question is controlled by another, which re-

lates to the conduct of the Roesch Company, the plaintiff in the attachment proceeding, in accepting the benefit of the assignment and waiving its right to an action at law. And finally, the relief to be granted depends upon which of the two trustees holds the superior title. In view of this situation, it appears to us, the first question calling for decision relates to the validity and legal effect of the conveyance by Shinn to Bacharach.

[1] This conveyance grew out of Shinn's insolvency and was suggested by his anxiety to conserve his property for the benefit of all his creditors. For some reason he did not choose to pursue the course provided by the Federal Bankruptcy Act or the one open to him under the General Assignment Act of the State of New Jersey (1 Comp. St. 1910, p. 114). If he had adopted either of these courses, the rights of all creditors would have been fixed by law. As he pursued another, its acceptance by his creditors in substitution for the remedies they already had, of course, had to be obtained. This was contemplated even by the instrument itself. Until the creditors accepted the assignment, each was free to pursue his own remedy with respect to the collection of the debt due him. If the assignment by Shinn constituted an act of bankruptcy, the requisite creditors in number and amount could have instituted proceedings against him in bankruptcy or each could have pursued his own remedy by an action at law. For a period of time these remedies were open to the Roesch Company, not because the course pursued by Shinn was void in that it did not conform to procedures prescribed by federal and state statutes, but because it was voidable so far as it affected an individual creditor who had not given his assent to it.

[2] While this was the state of the case, the Roesch Company did not avail itself of its rights and proceed against Shinn or his property for the recovery of the debt in any of the ways open to it. But this situation was changed, at least in so far as it concerned the Roesch Company, by the conduct of that company. The conduct of the Roesch Company was held to amount to an acquiescence in and an acceptance of the trust created by Shinn in part for its benefit. The legal effect of that conduct was the principal matter controverted in the court below and was the thing that controlled the decision of the court. It is quite unnecessary to review the testimony upon which the court based its decision that the Roesch Company, by its signature and by its acts, accepted the trust under the assignment and waived its rights to proceed at law for the collection of its debt. With this decision we are in entire accord. We therefore feel that it is sufficient for the purposes of this case merely to indicate the trend of the testimony in that particular.

Charles Roesch was vice-president of the Roesch Company and was the sole manager of its meat and provision business at Atlantic City, which he was permitted by the corporation to conduct in his own way both with respect to selling goods and extending credits. In the course of this business, Shinn's debt to the Roesch Company was incurred, and after Shinn's assignment, Charles Roesch actively and energetically co-operated with Bacharach, the trustee, in the disposition of the

assets of the insolvent estate, both individually and as a member of a committee appointed for that purpose. When a title guaranty company demanded a power of attorney signed by all of the creditors of Shinn, conferring upon Bacharach power of sale, Charles Roesch subscribed to that instrument the name of his corporation. Trouble of a personal nature arose between George Roesch and a relative of Shinn, resulting in an attempt by the Roesch Company to repudiate what Charles Roesch, its vice-president, had done. While there was no evidence that Charles Roesch was authorized by resolution of the Board of Directors of the Roesch Company to sign its corporate name to the power of attorney, the conduct of the corporation and its officers with respect to the whole transaction was such as to bring it within the general principle of the law of agency, that usual employment is evidence of the powers of an agent for whose acts, when performed within the authority so apparently conferred, the principal is responsible.

This doctrine, with its qualifications and limitations, has been applied to corporations, and in its application, it has been held that an officer of a corporation may, by acts of its directors or managers,

"be invested with capacity to bind the company by his acts beyond those powers which are inherent in his office; as where, in the general course of the company's business, the directors or managers have permitted an officer to assume the control and direction of its affairs, and have held him out to the public as its general agent, his authority to act for the company in a particular transaction may be implied from the manner in which he has been permitted by the directors or managers to transact its business." Fifth Ward Savings Bank v. First National Bank, 48 N. J. Law, 513, 7 Atl. 318; Stokes v. New Jersey Pottery Co., 46 N. J. Law, 237, 242; Martin v. Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49; Commercial Insurance Co. v. Union Mutual, 19 How. 318, 15 L. Ed. 636; Mining Co. v. Anglo-California Bank, 104 U. S. 192, 26 L. Ed. 707; Blake v. Domestic Mfg. Co., 64 N. J. Eq. 481, 58 Atl. 241.

[3] It is urged that the power of attorney signed by the Roesch Company lacked the signatures of the requisite number of creditors to confer upon Bacharach a valid power of sale. This is unimportant to the present discussion, because we are not concerned with the validity of the power of attorney or whether it conferred upon Bacharach a power of sale. If invalid now, it may become valid later. We are concerned only with the legal effect of the act of the Roesch Company in signing it. The failure of several creditors to sign the power of attorney affected only the legal sufficiency of that instrument as a grant of a power of sale, a question that has not been and conceivably may never be raised here. But the failure of several creditors to sign that instrument does not relieve those who signed it from the legal effect of their acts in other respects. The legal act intended by the Roesch Company in signing the power of attorney was to confer upon the trustee a power of sale. The legal act accomplished by its signature was an acceptance by the Roesch Company of the assignment made for its benefit. The act of the Roesch Company in signing the power of attorney was the exercise of a power conferred upon it by the trust, hence the legal effect of that act was the acceptance of the trust under which that power was exercised. Having accepted the trust, we are asked to decide whether the Roesch Com-

pany was free, seven months thereafter, to attach for its exclusive benefit the property which had been conveyed for the benefit of all. This raises the question whether by acceptance, the Roesch Company waived the right, which under the law it theretofore had, independently to pursue its own remedy for the recovery of its debt.

[4] This question relates more to the legal effect of the acceptance than to the legal character of the assignment. It has been urged that the assignment was void because it did not conform to the general assignment act of New Jersey, and therefore the acceptance of a void thing was itself a nullity. We are not impressed by this contention, because we are not satisfied that the assignment was void, or that it does not embody such a trust, which, if accepted by all of the creditors, would be enforced by a court of equity. At most the assignment was voidable. Though at first voidable, the assignment was made valid as to the Roesch Company by its acceptance. Though the Roesch Company had at first the right to treat the assignment as void, it waived that right by accepting it, and is now precluded to deny its validity. The principle of waiver, as applied to void or voidable transactions, is no stranger to the law, and is invoked when a party accepts rather than avoids a situation not imposed upon him by law. The illustrations are numerous.

A bond that was void (if executed under constraint) because of non-conformity with the statute under which it was drawn, was held valid if

"it is voluntarily entered into and the principal enjoys the benefits which it is intended to secure and a breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such a defense. In such cases there is neither injustice nor hardship in holding that the contract as made is the measure of the rights of the government and of the liability of the obligor." United States v. Hodson, 77 U. S. (10 Wall.) 395, 404, 409, 19 L. Ed. 937.

In a case against stockholders of a corporation, it appeared that the act of incorporation imposed upon the stockholders individual liability for the payment of its debts upon dissolution; that in compliance with an act of the Legislature, the corporation assigned its property for the benefit of its creditors; and that the act under which the assignment was made, declared that upon such an assignment, stockholders are relieved from personal liability. It further appeared that the creditor plaintiff had participated in the assignment and had received dividends therefrom. It was held that, though the act under which the assignment was made was unconstitutional and void as to creditors whose demands existed previous to the passage of the act, nevertheless those creditors who came in, acquiesced in the assignment and accepted dividends thereunder, were estopped and deprived of the right of calling upon the stockholders individually for the payment of the residue of their debts not paid under the assignment. Van Hook v. Whitlock, 26 Wend. (N. Y.) 43, 37 Am. Dec. 246.

It was early held that a state bankruptcy law which discharged the bankrupt from all liability for his debts is void as to non-resident creditors, as impairing the obligation of contracts, and that a discharge under such a law is not a good plea in bar of an action brought upon

such a contract. Sturges v. Crowninshield. 17 U. S. (4 Wheat.) 122, 4 L. Ed. 529; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606. Such a discharge under the bankruptcy law of Louisiana was pleaded in an action instituted by a creditor resident in Kentucky. The plea disclosed, however, that the non-resident creditor had participated in the bankruptcy proceeding of the debtor and had received and accepted one dividend. The court recognized the rule in Sturges v. Crowninshield, and Ogden v. Saunders, but held, that when the creditor voluntarily made himself party to a proceeding which as to him was void, he abandoned his extra-territorial immunity from the operation of the bankruptcy law of Louisiana, and waived his right to hold his contract unimpaired and to sue upon it. Clay v. Smith, 28 U. S. (3 Pet.) 411, 7 L. Ed. 723.

A discharge under the law of Scotland was set up against a debt contracted in England, which was conceded to be no bar, but the plea averred that the plaintiff appeared in the court in Scotland and opposed the discharge of the defendant, which was relied on as evidence of his consent to be bound by that law. That conclusion from the premises was denied by the court; but it was conceded, that if he had taken the benefit of the law by coming in and receiving a distributive share of the property, it would have been otherwise. His assent would have bound him. Phillips v. Allan, 8 Barn. & C. 477.

Where a debtor in failing circumstances had obtained from his principal creditor a promise to compose his debt if a like composition could be obtained from other creditors, and the principal creditor thereafter sued for the whole debt, it was held that the promise upon which was founded the original debt had

"become superseded by a new contract, founded on the consideration of the defendant's prior indebtedness; in which contract other persons have become interested, and which has been executed by them to such an extent that it cannot now be rescinded by the plaintiffs. The former contract is annulled, and the plaintiff's sole remedy is on the new contract, substituted in its stead." Browne v. Stackpole, 9 N. H. 478.

The principle controlling these cases, in our opinion, is applicable with equal force to the case under consideration, and controls our judgment that in waiving its rights under a voidable assignment and in accepting the provisions thereof by acts which induced other creditors to accept them, the Roesch Company could not treat the assignment and its own acts as nullities and profit by an action at law subsequently instituted for the recovery of its debt.

[5] Another theory of the case may be referred to briefly, which, if tenable, would prevent the attachment of the Roesch Company from having effect. On its face the deed from Shinn purported to transfer to Bacharach his entire legal title, and in that event no title remained in Shinn which the Roesch Company could attach. It is true, that the legal title was conveyed in trust, but unless the trust was void, the transfer of the title would continue to be effective, and nothing would remain in Shinn at the time of the attachment. It is doubtful whether the validity of the trust can be determined in this proceeding; for, while the trust has not yet been made effective because it has not

yet been completely executed, there seems to be no reason why the unassenting creditors of Shinn may not still accept it, and it would then become wholly effective. Until, therefore, the validity of the trust be directly attacked, it is at least a debatable proposition, whether the face of Shinn's deed to Bacharach should not prevail, and if it should, the attachment would be of no avail.

[6] The remaining question relates to the character of the relief asked by the bill. Mumford, Shinn's trustee in bankruptcy, prays that Bacharach, Shinn's trustee by deed, be decreed to convey and deliver to him all property received from Shinn not distributed under the trust. This raises a question whether the trustee under the deed or the trustee in bankruptcy holds the legal title to the property, and if in different ways both hold title, then which title is superior?

The title of Shinn's trustee in bankruptcy is no greater than was Shinn's title when the trustee was appointed. When Shinn by deed conveyed his property to Bacharach, he divested himself of all title. That deed and the trust created by it are unquestionably valid as between Shinn and Bacharach. So long as the trust is active and the property conveyed is applicable to it, Shinn, and therefore his trustee in bankruptcy, are without interest in the property; but should the trust cease or the property exceed its requirements, the property unused or assets unexpended would revert to Shinn, and, by operation of the bankruptcy law, would vest in his trustee in bankruptcy. This contingent interest is the only title of the complainant, trustee in bankruptcy, which we discern, and because of it, we approve the propriety of the decree of the court below in directing Bacharach, trustee, to transfer and convey to Mumford, trustee in bankruptcy, such property, real and personal, "as remains in his hands *after executing the trust* imposed under the decree to him as trustee."

The decree below is affirmed.