# MUTUAL RESERVE FUND LIFE ASSOCIATION *v.* HAMLIN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

No. 184. Argued March 2, 3, 1891. — Decided March 23, 1891.

The plaintiff in error was an association formed " to furnish substantial aid to their families or assigns in the event of a member's death." The husband of the defendant in error became a member, and received a cer- tificate stating that in consideration, among other things, " of the payment of all dues and of all mortuary assessments " his wife should be entitled to receive $10,000 from the death fund of the association. The consti- tution and by-laws of the association provided that a mortuary assess- ment should be made on the first days of February, May, August and November, but did not fix any rate; that it should be the duty of a mem- ber failing to receive notice of an assessment on or before those days, to notify the home office thereof; and that a failure to pay the assess- ment within thirty days from said first days should work a forfeiture of membership. When the husband died he had failed for more than thirty days to pay an assessment which had been made, and had not informed the association that he had failed to receive notice of it. To an action brought by the beneficiary to recover the amount insured the association set up these failures in defence. *Held,*

(1) That the association was not required to make assessments except when made necessary in order to meet existing claims;

(2) That the insured was entitled to notice of each assessment;

(3) That the failure of the assured to inform the association of a failure to receive notice of an assessment did not work a forfeiture of membership and of previous payments;

(4) That, as there was conflicting evidence upon the issue of fact whether notice of the assessment was mailed by the association to the assured, it was properly left to the determination of the jury.

THE case is stated in the opinion.

*Mr. Alfred Taylor*, with whom was *Mr. Frederick S. Parker* on the brief, for plaintiff in error.

*Mr. Charles E. Perkins*, with whom was *Mr. Solomon Lucas* on the brief, for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action is based upon a certificate of life insurance. There was a verdict and judgment in favor of the plaintiff, the beneficiary in the contract of insurance. The refusal of the court to direct a verdict for the defendant and its rulings upon questions of law occurring at the trial constitute the general grounds upon which a reversal of the judgment is sought.

The Mutual Reserve Fund Life Association, the defendant below, was organized under the laws of New York "to promote the well-being of its members and to furnish substantial aid to their families or assigns in the event of a member's death." Its constitution and by-laws, in force January 11, 1883, provided that within ninety days after receiving satisfactory notice and proof of the death of a member, the association should pay to the beneficiary named on its books, or to his or her assigns or legal representatives, the amount due according to the terms of the certificate of membership; and that seventy-five per cent of all net death assessments received by the association should go into the "death fund," the balance, together with the net earnings of the association, constituting the "reserve fund," no part of which could be used

for expenses. They also provided: " On the first days of February, May, August and November (or at such other periods as the board of directors may determine) an assessment shall be made upon the entire membership in force at the date of the last audited death claim prior thereto for such a sum as the executive committee may deem sufficient to meet the existing claims by death, the same to be apportioned among the members, according to the age of each member, as per the rates named in the certificate of membership, and the net amount received from such assessments (less twenty-five per cent to be set apart for the reserve fund) shall go into the death fund. A member failing to receive a notice of an assessment on or before the first days of February, May, August and November, for. his share of the losses occurring during the time specified, it shall be his duty to notify the home office in writing of such fact. A failure to pay the assessment within thirty days from the first days of February, May, August and November, (or at such periods as may be named by the directors,) shall work a forfeiture of membership in this association with all rights thereunder. The provisions of this amendment shall take effect on and after August 1, 1883." Further : " If any member shall neglect to pay any dues or assessments when due, or if any of the conditions are violated upon which the certificate of membership is issued, then and in every such case such membership shall at once cease and determine and all payments made thereon shall be forfeited to the association, but the executive committee shall have the power to reinstate such delinquent member at any time within one year for good cause shown and upon satisfactory evidence of good health and upon payment of all delinquent dues and assessments."

The certificate of insurance here in suit was executed July 26, 1883. It contains, among others, the following provisions: " In consideration of the statements, representations and warranties contained in the application for this certificate of membership, and of the admission fee paid, and of the dues to be paid for expenses on or before the thirtieth day of June in every year during the continuance of this certificate, and of

all mortuary assessments, as per table endorsed hereon, payable at the principal office of the association, in the city of New York, within thirty days from the date of each notice, the Mutual Reserve Fund Life Association does hereby receive Henry H. Hamlin, of Norwich, county of New London, State of Connecticut, as a member of said association. Whenever the death fund of the association is insufficient to meet the existing claims by death, an assessment shall be made upon the entire membership in force at the date of the last death, the same to be apportioned among the members according to the age of each member, for such sum as the executive committee may deem sufficient to cover said claims, and the net amount received from such assessment (less twenty-five per cent to be set apart for the reserve fund) shall go into the death fund. Within ninety days after receipt of satisfactory evidence to the association of the death of the above-named member during the continuance of this certificate of membership there shall be payable to Sarah C. Hamlin, (wife,) of Norwich, county of New London, State of Connecticut, if living at the time of said death, otherwise to the legal representatives of said member, the sum of ten thousand dollars from the death fund of the association at the time of said death or from any moneys that shall be realized to the said fund from the next assessment, to be made as hereinabove set forth, and no claim shall be otherwise due or payable except from the reserve fund as hereinafter provided." "This certificate . . . shall be subject to all the provisions and stipulations contained in the constitution and by-laws of this association, with the amendments thereto." Upon the subject of notices by the association to members, the certificate provided: "A notice addressed to a member at his post-office address as appearing upon the books of the association according to its usual course of business, shall be deemed a sufficient notice; and proof of mailing same, according to the usual course of business of said association, shall constitute and be deemed and held sufficient proof of compliance herewith on the part of said association." The same provision as to notice was in the constitution of the association.

The certificate, by its terms, was to become null and void if any of the payments provided for in it were not made, " when due," at the office of the association in New York, or to one of its agents furnished with a receipt signed by its president, secretary or treasurer.

It was in proof that mortuary assessments were made four times a year up to August 1, 1883. But by a resolution of the board of directors, adopted July 11, 1883, it was declared that " hereafter the stated periods for making the mortuary assessments upon the members of this association under the provisions of the constitution shall be the first week days of February, April, June, August, October and December." Notice of this amendment of the constitution was duly mailed to Hamlin at his address appearing on the books of the association, along with notices of mortuary assessments made, respectively, August 1, 1883, October 1, 1883, December 1, 1883, February 1, 1884, and April 1, 1884. He became insane in the fall of 1883, and in November of that year was removed to a hospital for treatment — remaining in that condition until his death, which occurred February 15, 1885. It was admitted at the trial that all mortuary assessments against him prior to and including that of April 1, 1884, were paid, and that there was an assessment upon him of $16 on the 2d of June, 1884.

It was averred, in the defendant's answer, among other things, that due notice according to its usual course of business, of the mortuary assessment of June 2, 1884, was mailed at New York, postage paid, directed to the insured at his post-office address as appearing upon the books of the association, namely, " Mrs. H. H. Hamlin, Norwich, Connecticut;" that no information was given to it from any source of any failure to receive such notice; and that by reason of the non-payment of that assessment within the prescribed time, Hamlin ceased to be a member of the association, and the certificate held by him became null and void. To this the plaintiff replied that notice of such assessment was not mailed or sent to the insured or to her, nor received by either; that not until September, 1884, did she hear of the June assessment; that immediately after obtaining information of it, namely, on the

6th day of September, 1884, she offered to the defendant the amount due on that and all subsequent assessments, but the latter refused to receive the same, claiming that the certificate of insurance had become void, and that the insured was no longer a member of the association. It was in proof that such an offer was in fact made and refused ; that similar offers were made October 6, 1884, and every two months thereafter, each of which was likewise refused upon the ground that Hamlin had forfeited his membership in the association.

In December, 1884, application was made to the association (by whom does not appear) in the name of Hamlin for his reinstatement as a member. The application was denied. This fact was also pleaded in bar of the action.

By the terms of the contract the certificate of insurance issued to Hamlin became null and void, if he failed to pay, when due, at the office of the defendant, in the city of New York, or to its agent, furnished with the proper receipt, any assessment upon him. An assessment became due and payable " within thirty days from the date of each notice," that is, from the date of the notice of such assessment. But if the insured was entitled, of right, to notice — at least in the form prescribed by the contract, namely, by mail, according to the defendant's usual course of business — and such notice was not, in fact, given, the assessment, as to him, did not become due and payable, and he did not cease to be a member of the association by reason of his failure to pay it. That he was entitled to notice is too clear to admit of dispute. The clause in the defendant's constitution making it the duty of " a member failing to receive a notice of an assessment," on or before certain days, to advise the association of the fact, and the clause in both the constitution and the certificate of insurance, declaring that notice directed to the insured, according to his address as appearing upon its books, and mailed to him according to its usual course of business, should be deemed and held sufficient proof of compliance on the part of the association, necessarily imply that it was the duty of the association to give notice of mortuary assessments. It is true, the insured was informed by the defendant's constitution, as amended July 11, 1883, subject to

which the contract of insurance was executed, that assessments would regularly be made in February, April, June, August, October and December, or at such other periods as the directors might determine. But if the association was bound to make assessments in those months, whether made necessary or not by its financial condition, still the insured could not know, in advance, the amount of an assessment; for such amount depended upon the state of the "death fund," the determination of the executive committee as to the sum required "to meet the existing claims by death," and the apportionment of that sum among members according to their respective ages and the rates specified in the certificates of membership. Now, it is contended, that the failure of the insured, in this case, to inform the defendant in writing that he had not received notice of the assessment of June 2, 1884, was alone sufficient to forfeit his membership. This suggestion necessarily proceeds upon the ground that the association had no discretion but to make an assessment on that day, and that the insured must be held to have known that one was made, although he could not have knowledge of its amount. This construction of the defendant's constitution and by-laws may well be doubted. We incline to the opinion that the association was not required to make an assessment except when the condition of the "death fund" made it necessary to raise money to meet existing claims by death. The contract — adopting almost literally the words of the constitution — required an assessment "whenever the death fund of the association is insufficient to meet the existing claims by death," and "for such sums as the executive committee may deem sufficient to cover said claims." This would indicate that an assessment should not or would not be made unless rendered necessary by the condition of the death fund. Be this as it may, the duty imposed upon the insured to inform the company of his failure to receive notice of an assessment was neither expressly, nor by necessary implication, made *a condition* of the contract, the non-performance of which would cause a forfeiture of membership and previous payments. If the defendant did not make an assessment, information in writing from the in-

sured that he had not received notice of one would have been an idle ceremony. If it made one, and did not give the insured notice of it — at least in the mode prescribed — his failure to inform the association that he had not received notice of such assessment was immaterial and could not excuse its failure to give the required notice.

Did the defendant give notice to the insured of the assessment of June 2, 1884? That is the controlling question in the case. The court instructed the jury that it was not incumbent upon the defendant to prove anything more than that it mailed a notice of the assessment to the insured according to his address and its usual course of business, and that fact being proved it was entitled to a verdict whether the insured received the notice or not. Whether the clause in the certificate of insurance relating to notice means anything more than that proof of mailing a notice according to the defendant's usual course of business, directed to the insured at his post-office address as appearing upon its books, made a *prima facie* case of compliance upon its part with the terms of the contract, leaving the insured to prove, in order to prevent a forfeiture of his membership, that the notice was not in fact received by or for him, we need not determine. The defendant obtained the most favorable construction of the contract to which it was entitled under any view, and the only question open to it upon this writ of error is whether the court erred in holding that the burden of proof was upon it to show that a notice properly directed was mailed according to its usual course of business. We are of opinion that upon this point no error was committed. As the insured was not bound to pay an assessment of which notice was not given, at least in the mode designated, and as the duty to give such notice was, necessarily, upon the defendant, it could not claim a forfeiture except upon showing that that duty was performed. But the contention is, that the proof of such mailing was so overwhelming that the court erred in refusing to instruct the jury to find a verdict in its favor. We do not concur in this view. Without referring to the evidence in detail, we content ourselves with saying that upon the issue as to whether notice was, in fact,

mailed, as claimed by the defendant, there was evidence both ways. The case, upon this point, was peculiarly one for the jury.

In this connection, it may be observed that while the defendant claims a forfeiture of the contract by reason of the failure of the insured to pay the June assessment within thirty days after notice thereof was mailed to him — which its officers testified must, according to the usual course of business, have been on the evening of May 31, 1884 — in its answer, verified by the oath of its president, it stated that mortuary assessments were made upon the insured on the first days of August, October and December, 1884, and that it mailed to him notices of each of those assessments; that he failed to pay any one of them; and that by reason of each one of such failures the certificate became void. According to the theory of the defence as thus disclosed by the answer, it may well be inquired why the defendant treated the insured as a member of the association after the time when, according to its present contention, he had forfeited his right of membership? And why did it refuse, in September, to accept payment of all previous unpaid assessments, and yet, in October, and again in December, make further assessments upon him as a member? Notwithstanding the above allegations in the answer, it was not claimed at the trial that notices of assessments subsequent to that of June were mailed to the insured. The case went to the jury upon the issue as to whether notice of the June assessment was mailed to the insured; the court ruling that if it was so mailed, the defendant was entitled to a verdict. This could have occurred only upon the ground that the defendant was mistaken when it alleged in its answer that notices of assessments made in August, October and December were mailed to the insured. We suppose the fact to be that no assessments were made in those months upon Hamlin; and the defendant would have appeared to better advantage if it had modified of record those parts of its verified answer averring not only that assessments were made in those months upon Hamlin, but that notices thereof were mailed to him. The whole question of mailing was left in such condition by

the proof that it would have been error to take it from the jury.

Some stress is laid upon the fact that an application was made in December, 1884, in the name of the insured, for reinstatement as a member of the association. When information of the June assessment was received by Mrs. Hamlin, the beneficiary in the contract of insurance, in September, 1884, she promptly offered, through a friend, to pay all previous unpaid assessments upon the insured. The defendant refusing to accept such payment, and denying that the insured was any longer one of its members, the attempt was made to have him reinstated by the act of the association. That attempt — evidently made to avoid litigation — cannot be regarded as a waiver of the rights the insured had as a member; for those rights were not forfeited by his failure to pay the assessment of June 2, 1884, the only one in question; notice of which, as the jury found, was not given as required by the contract.

Numerous other points have been made on behalf of the defendant. But they are the merest technicalities, in nowise involving the substantial rights of the parties. We do not feel obliged to extend this opinion by a discussion of questions of that character.

We find no error of law in the record, and the judgment is

*Affirmed.*