### SUPREME COUNCIL AMERICAN LEGION OF HONOR v. ORCUTT.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1903.)

No. 1,099.

1. **FRATERNAL INSURANCE—ACTION ON CERTIFICATE—PLEADING.**

An allegation in a petition on a benefit certificate in a fraternal order that the insured "at all times from and after his admission to membership to said defendant, until up to the time of his death, promptly and punctually paid all assessments, dues, charges, and demands levied, charged, and demanded of him by said defendant," is sufficient, on demurrer, as an allegation that such payments were made to the proper officer of defendant.

2. **APPEAL—REVIEW—ERROR NOT PRESUMED.**

On an assignment of error for admitting the answer of a witness claimed to have been incompetent, where the answer is susceptible of two constructions, one of which renders it competent, it will be given such construction in support of the ruling, as error must affirmatively appear.

3. **FRATERNAL INSURANCE—RULES GOVERNING CONTRACTS.**

A fraternal order or association has the power and the right to make and enforce rules in respect to the discipline and social relations of its members, and to prescribe their conduct toward the association and each other; but when it enters into contractual relations with them, as by the issuance of benefit or insurance certificates, it assumes obligations which are subject to the rules and principles which govern such contracts in general, and which are enforceable in the courts.

4. **SAME—METHOD OF PAYING ASSESSMENTS—ESTOPPEL.**

A by-law of a fraternal insurance order in relation to the payment by members of assessments on their benefit certificates, providing that "every member of the order shall pay to the collector of his council," is not to be so rigidly construed as in all cases to preclude payment through others; and where payments were made by certain members for more than two years to one authorized by the head of the order to receive the same and forward them to the collector, and such payments were received without objection and paid into the general treasury by the collector of the subordinate council, the association must be presumed to have known of and ratified such method of collection, and it could not lawfully suspend a member's insurance because of a delay by its agent in forwarding an assessment which was paid to him by such member in accordance with the custom and within the required time.

5. **SAME—WRONGFUL SUSPENSION OF MEMBER—WAIVER OF RIGHTS.**

Where a member of a fraternal order was wrongfully suspended, and thereafter received no notice of assessments due on his benefit certificate, his rights were not prejudiced by the failure to tender such assessments, nor waived by his making application for reinstatement.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

¶ 5. See Insurance, vol. 28, Cent. Dig. § 1921.

Henry & Robert Newbegin (Alfred J. Carr, of counsel), for plaintiff in error.

F. W. Sturdivant (Alex. L. Smith, of counsel), for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. This was an action brought by the plaintiff below to recover from the plaintiff in error here the amount claimed to be due upon a contract of insurance upon the life of her husband, Milton E. Orcutt, called in the record a "benefit certificate," in the sum of $5,000. The certificate was issued in 1881, and read as follows:

"This certificate is issued to said companion as an evidence of the fact in it contained, and as a statement of the contract existing between said companion (Milton E. Orcutt) and the Supreme Council American Legion of Honor. In consideration of the full compliance with all the by-laws of the supreme council now existing or hereafter adopted, and the conditions herein contained, the supreme council hereby agrees to pay James A. Orcutt, father, five thousand dollars, upon satisfactory proof of the death, while in good standing upon the books of the supreme council, of the companion herein named, * * * subject, however, to the conditions, restrictions, and limitations following: * * * That said companion shall have paid all assessments called, to the benefit fund, within the time and in the manner required by the by-laws of the supreme council in force at the time of the issuance of this certificate, or as the same may be hereafter amended. That this benefit certificate is issued by the Supreme Council American Legion of Honor, and accepted by the companion herein named, for himself and for his beneficiary, upon the express condition and agreement that, in case of any false or fraudulent statement or misrepresentation or violation of any of the covenants herein contained, the same shall be void."

James A. Orcutt, the beneficiary, died December 29, 1891. The insured was married to the plaintiff October 28, 1896, and they lived together as husband and wife until he died, September 1, 1898.

A by-law of the association provided as follows:

"In the event of the death of all beneficiaries selected by the member, before the decease of such member, if no other and further disposition thereof be made in accordance with the provision of these by-laws, the benefit shall be paid to the widow and children of the member in equal shares."

There was a trial by a jury, and a verdict and judgment for the plaintiff in the sum of $5,748.67.

At the time the certificate was issued, Orcutt, the insured, was a member of a subordinate council at Defiance, Ohio. By a rule of the association, whenever the number of members in a subordinate council was reduced below 11, the council would become defunct, and the members were to be transferred to some other council. In 1893 the number of the Defiance council was reduced below 11, and continued to diminish until March 7, 1895, when the supreme secretary wrote a letter to Orcutt, stating that the charter must be surrendered, and recommending him to communicate with the secretary of the grand council and obtain a transfer of membership. The Defiance members continued members at large until April 8, 1895, when they were transferred to Alpha Council, No. 1, whose office was at Boston, Mass., of which, the petition alleges, Orcutt continued a member until

the time of his death. It is also averred that he paid all assessments and dues from the date of his certificate. To a petition alleging substantially the foregoing facts, the defendant filed a general demurrer. This was overruled, and the defendant answered, denying the averments of the petition, and setting up the defense upon which reliance is mainly placed, namely, that the insured neglected to pay his assessment for the month of July, 1897, and was thereupon, for that cause, duly suspended in accordance with the rules of the association, and was never thereafter reinstated.

The order of the court overruling the demurrer is challenged by an assignment of error upon the grounds that it does not appear by the petition that any notice was given to the association of the death of James A. Orcutt, the original beneficiary, or of the plaintiff's marriage to the insured; that she sues as his representative; and that there is no direct allegation that the insured paid to the collector of Alpha Council, No. 1, the assessments due after the transfer to that council. But it does not appear that notice of the death of the original beneficiary was required by any rule or by-law of the association. The widow does not sue as representative of any one, but as the widow of the deceased, who is constituted the beneficiary by the by-law of the association above set forth; and the allegation of the petition is that the insured, "at all times from and after his admission to membership to said defendant until up to the time of his death, promptly and punctually paid all assessments and dues, charges and demands, levied, charged, and demanded of him by said defendant, and by said subordinate council thereof, such as he was required to pay in accordance with its rules and by-laws, as the same became due and payable." This allegation imports that he paid his assessments and dues to the association, and certainly is sufficient upon general demurrer. The demurrer was properly overruled.

Upon the trial it appeared that the assessment for the month of July, 1897, was, by the rules of the association, required to be paid before the end of the month; that the insured paid it to one Daoust, the cashier of a bank at Defiance, on or before the 20th of July, 1897, but that Daoust did not forward it to the collector of Alpha Council, No. 1, until the 5th of August following; that the collector was required to make his returns to the supreme treasurer for the month of July on August 12th; that he reported the receipt of Orcutt's July assessment as not having been paid until August; that Orcutt was thereupon suspended, and the check was returned to Daoust; that he made application for reinstatement on August 23, 1897; that his case was referred to the medical examiner, who reported his physical constitution not acceptable, and thereupon the petition for reinstatement was disallowed; that Orcutt was at the time of his suspension in failing health; and that he died in September of the following year. There was testimony tending to prove that in the spring of 1895 Mr. Daoust received a letter from the supreme commander of the order authorizing him to collect the assessments due from the members at Defiance, and that he soon afterwards began to receive the statements of the assessments monthly, with blank receipts for each member; that these statements and receipts were received in

envelopes bearing the direction, "Return to F. O. Downes, Alpha Chapter, No. 1;" that he collected the assessments and sent them in one check monthly to the address at Boston; that he sent them during the month in which they were payable, sending back the blank receipts for signature, which came back signed during the first half of the ensuing month, and were by him delivered to the members, and that this mode of doing business continued until the payment of the assessment for July, 1897; that the sum due for Orcutt's July assessment was in his hands as early as the 20th of that month, but that, on account of his own absence and oversight, he did not send in the assessments for July until after the expiration of the month. Testimony to this effect was given by Daoust. But in the course of his examination a ruling was made which is the subject of an assignment of error. While he was testifying about receiving the letter from the supreme commander directing him to collect the assessments,—it having been shown that the letter was lost or could not be found,—the course of examination was as follows:

"Q. You may state, if you can, what the letter said, or what the contents of that letter were, as near as you can recollect? (Objection by counsel for defendant on the ground that the loss of the letter is not proved, that the question calls for incompetent and irrelevant evidence, and that no evidence has been given showing that Supreme Commander Gwinnell, had authority to bind the defendant by his action.) The Court: I think the loss is sufficiently shown. The objection will be overruled. (Whereupon counsel for defendant excepted to the ruling of the court.) Q. You may answer the question, Mr. Daoust. A. I don't remember the wording, but it was authorizing me— The Court: No, no. Q. Give in substance what he said to you? A. I don't remember the wording. Q. We don't ask you for the exact wording. We. ask you for the substance of the wording. The Court: You must not give the interpretation by saying they authorized— A. To collect these three men, and remit to Council No. 1, in Boston. (The last three answers objected to by the defendant on the grounds that they state a conclusion, instead of the purport of the letter; and defendant asked the court to rule out the same, which request was overruled by the court, and exceptions taken by the defendant.)"

It is urged that the last three answers stated a conclusion, and should have been ruled out. The contention is that the last answer, "To collect these three men, and remit to Council No. 1, in Boston," should be construed as connected with the former words, "authorizing me"; and it is possibly susceptible of that construction. But we think the more reasonable construction is that the witness was proceeding to state the substance of the letter. He had been expressly warned that he was not to give his interpretation, but to give the substance of the wording, and it is quite clear that the court understood him to be stating the substance, and not the interpretation. Error will not be presumed. The burden of showing it must rest upon the party complaining. We think the exception should not be sustained.

We have not given all of the testimony. There was some from which the inference might be drawn that Daoust was acting as the agent of the members in forwarding their assessments; but it is not of a decisive character, and the jury were authorized to draw their own conclusion as to whether Daoust was acting as the agent of the association or of the members at Defiance. The testimony was not so clearly one-sided that the question should have been taken from them and de-

cided by the court, and in such case the verdict must be respected. This is decisive of the main question in the case.

Counsel for the defendant prayed for peremptory instruction that the plaintiff was not entitled to recover. The court refused to give such instruction, and the defendant excepted. In support of the assignment of error in this refusal, it is urged:

1. That Orcutt was not in fact a member in good standing at the time of his death. But if the fact be, as the jury found, that he was suspended without cause, it was not competent for the defendant to put its own wrongful action forward as a defense. We do not question the power and right of the association to make and enforce such rules and regulations in respect to the discipline and social relations of its members, and to prescribe the conduct of its members with reference to the association and between its members. All that must be rightfully remitted to its jurisdiction. But when, as here, it enters into contract relations with its members, it assumes obligations which become subject to the rules and principles which govern contracts in general. It cannot be admitted that a contract entered into with so much solicitude on the part of the member, and kept alive by frequent financial sacrifices during one's whole life, is subject to be disappointed at the end by the capricious and wrongful conduct of the association. It is impossible to suppose that the parties entering into such contract intended that its obligation should depend upon the willingness of the insurer to perform it. On the contrary, it is a perfectly just and reasonable presumption that the insured relied upon the expectation that, if he performed his part of the contract, the association would deal with him accordingly, and, when its time should come, it would perform its part in good faith. The association knew that the insured expected this, and must be held to have accepted this expectation as the measure of its own undertaking. To take from under him his standing ground, and then, because he had lost it, deny him the benefit of its promise, is tantamount, at least, to a point-blank refusal, without such preparation for it. And how shall the validity of the refusal, and of the reason for it, be determined? Unless this may be done by the courts of justice, there is no way of enforcing the contract, and it comes to naught.

2. It is further urged that the insured forfeited his rights by his failure to pay the assessment in accordance with by-law 62. This by-law contains nothing new. Stress is laid upon the language, "Every member of the order shall pay to the collector of his council," and it is contended that the supreme commander had no authority to appoint a collector at Defiance; that, under the by-laws of the association, his authority to appoint a collector there expired when the members were transferred to Alpha Council, No. 1; and that thereafter the members should have paid directly to the collector of that council. It may admit of question whether the language above quoted from this by-law is to be so rigidly construed as to require that the money should be paid directly to the collector himself. The substance is that he is to collect the assessments, as his title implies. Circumstances might arise which would require that he should do it by the hand of another. Be that as it may, it appeared by uncontradicted evidence that the

method of collecting the assessments begun in the interim was continued after the transfer for more than two years, down to the time of the suspension, during which period from 25 to 30 assessments were collected and paid over by Daòust to the collector at Alpha Council, No. 1, without any objection or question made by that collector or any officer of the association; and no objection was made on that ground, at the time it was received, to the collection made by him of the assessment for July, 1897. None of the previous collections were offered to be returned. Since a corporation can only act by its agents, we think it should be imputed to the corporation, after so long a period, that it had knowledge of the course of business pursued by them, and that a party dealing with it would have the right to suppose that it was sanctioned. The association received and kept the assessments collected in this way. A corporation, as well as private individuals, must, in the interest of the public, be held to know, at least within some reasonable time, how its business is being carried on, and be estopped from denying that it had knowledge of and assented to the means by which it is done. A single incident might not be sufficient, or a few occurring within a short period. Mahoney Min. Co. v. Anglo-Californian Bank, 104 U. S. 192, 26 L. Ed. 707; 1 Mor. Priv. Corp. § 509. It may be that, if these assessments had belonged to the subordinate council, other reasons might have force; but here they were all due to the association. They were received into the general treasury, and were retained by the defendant. The collector, in what he did, was acting, not as the agent of the subordinate council, but as the agent of the association itself.

That the insured did not tender subsequent dues and assessments, or claim the privileges of a member, is of no moment. He had no notice of any such levies, and it would have been a vain thing for him to make such tender or to claim his privileges. Nor did his claim to be reinstated constitute a waiver of his right. That was an obvious and proper way to have the wrong undone. The defendant's refusal was a repetition of the wrong. The association was in no wise prejudiced by those proceedings, and is in no position to claim that the plaintiff surrendered a valuable right. Association v. Hamlin, 139 U. S. 297, 11 Sup. Ct. 614, 35 L. Ed. 167.

Questions subordinate to those already considered are presented by the record, but they are controlled by what we have said. There are no others which seem to require discussion.

There was no error in the charge of the court which, in the view we have taken of the case, injuriously affected the defendant.

The judgment is affirmed.