## Sterling Life Insurance Company v. Martha J. Rapps.

1. INSURANCE—*when company bound by answer in application for.* An incomplete answer by an applicant for insurance is deemed accepted as sufficient where a policy has issued pursuant to the application.

2. FORFEITURE—*when estoppel to declare, for non-payment of assessments, arises.* If by the statements and conduct of the insurer, the insured has been given to understand and induced to believe that a collector would call at his residence to collect his assessments as they became due, and that, if for any reason the assessments were not paid when called for by the collector, the insured might nevertheless pay the same at the office of the insurer without incurring a forfeiture, and the insured relied upon such statements and conduct, the insurer, by failing to send a collector to collect a particular assessment, is estopped to declare a forfeiture of the certificate for failure to pay such assessment upon the date of its maturity.

3. FORFEITURE—*application for reinstatement does not establish.* If a certificate of insurance was not, in fact, forfeited by the failure on the part of the insured to pay an assessment, the fact that he applied for reinstatement does not operate to produce or establish such a forfeiture.

Action in *assumpsit.* Appeal from the Circuit Court of Sangamon county; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard

in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906.

PATTON & PATTON and ROBERT H. PATTON, for appellant.

HAMILTON & CATRON, for appellee.

Mr. JUSTICE BAUME delivered the opinion of the court.

This is an action in *assumpsit* by appellee against appellant to recover the amount of a benefit certificate issued to Edward Rapps in his lifetime, for the sum of $1,000, wherein appellee, the wife of the insured, is named as beneficiary. A trial by jury resulted in a verdict and judgment against appellant for $1,076.49, being the face of the certificate and interest.

During the summer of 1903, appellant, which was organized as an assessment life insurance company, was engaged in procuring the required 500 applications for life insurance necessary to procure its charter. The requisite number was procured, and a license issued to appellant October 13, 1903. On July 21, 1903, Oscar Becker, a canvasser for appellant, procured the application of Edward Rapps for a policy of insurance on his life in favor of appellee, in the sum of $1,000, and on September 21, following, Becker in company with Dr. Colby, the medical examiner of appellant, called upon Rapps at his place of business to make the required medical examination.

The questions and the alleged answers of the insured thereto relative to his health and habits, so far as such questions and answers are here involved, appear in the medical examination, attached to and made a part of the application, as follows: "12. A— For what have you had medical advice during the past seven years?" "Answer—No." "B—Dates?" "Answer—No." "C—Duration?" "Answer—

No." · "E—Have you named everything?" "Answer—Yes." "19. A—What is your present use of liquors and narcotics? (State amount and kind used and whether daily.)" "Answer—Drink occ." "B— Have you indulged in excess in the past five years in Wine, Spirits or Malt Liquors? (If so state when and how often.)" "Answer —No."

An assessment of $3.85 was due and payable by the insured on the 21st of each month, and was usually collected by a collector for appellant who called upon the insured at his residence or place of business for that purpose. When such collector so called for the second assessment due November 21, 1903, the deceased was absent, but on the following morning he paid said assessment at the office of appellant. The assessment due February 21, 1904, was not paid by insured upon that day. Alfred Lanphier, then employed by appellant as a collector, testified that he called at the residence of the insured to collect the assessment due February 21, but failed to find any one and reported that fact to the office. Appellee testifies that no collector having called for the assessment up to February 23, she called up the office of appellant by telephone and inquired why a collector had not called to collect the assessment due February 21, and was informed that appellant did not have any collector then and that she would have to come to the office to pay the assessment. Be that as it may, in the latter part of February, or the first of March, the insured, or appellee acting for him, sent Robert Owens, a bartender in the employ of the insured, to the office of appellant to pay the assessment. Owens paid the assessment as directed and received a receipt therefor indorsed, "Subject to reinstatement, subject to health certificate." Owens was then given a blank application for reinstatement and directed to procure the signature of the insured thereto and return the same to appellant. On March 2, the application for reinstatement was

signed by the insured, and returned to appellant, and the insured was on that day recorded as reinstated. The application for reinstatement is as follows:

"APPLICATION FOR RESTORATION OF POLICY.

*To the Sterling Life Insurance Company, Springfield, Illinois.* I hereby request the reinstatment of my Policy No. 274, issued by the Sterling Life Insurance Company, which became forfeited on account of the non-payment of premium due February 21, 1904, and for the purpose, and in consideration of such reinstatement I do declare, guarantee and warrant on my honor that I am by occupation a saloon proprietor, that I am of sound constitution, good health and temperate habits, and that since the date of my application I have sustained no personal injury, nor been afflicted with any disease or sickness whatever, except, to wit, ................................., from which I have fully recovered, and that I have not made application to any other company, association, or society, upon which a policy or certificate has not been issued. This statement is given as a part of the consideration for the reinstatement of said policy, which shall be void if the above representations are untrue in any respect.

Dated this 2nd day of March, 1904.

Witness: W. B. PICKRELL.

(Sign here)      EDWARD RAPPS."

The insured died March 18, 1904, of acute diabetes. It is insisted on behalf of appellant that the answers of the insured to the questions propounded in his medical examination relative to his having had medical advice during the period of seven years prior thereto, and his habits with respect to the use of intoxicating liquors, were material to the risk, were false, and were known by the insured to be false and that the certificate of insurance was thereby voided. The blank provided by appellant for application for membership and the medical examination of the applicant requires that the answers to the several questions, here involved, must be written by one of the appellant's examiners. The evidence is uncontroverted that the

questions were propounded to the insured by Becker, the solicitor of appellant, while Dr. Colby was conducting the physical examination, and that the answers to the questions were written by Becker. Becker testifies that in answer to the question, "For what have you had medical advice during the past seven years?" the insured said, "No, sir; he had no doctor," or words of similar import; that he wrote the word "No," to represent the answer of the insured that he had not had any doctor; that he did not propound to the insured the questions designated "B," "C" and "D," but considered that the answer to the question "12A" covered the whole thing and so wrote "No" in answer to the several subdivisions of that question. It is manifest that the answers are not responsive to the questions. Conceding that the explanation given by the witness Becker is true, it indicates a gross laxity in appellant's method of conducting an examination, and as gross carelessness upon its part in passing upon the sufficiency of an examination submitted to it for approval. It may well be that if the questions which Becker did not propound to the insured had been specifically brought to his notice, they would have directed his attention to certain circumstances, which had escaped his general recollection, and thus enabled him to answer the questions truthfully. There is evidence tending to show that prior to his application for insurance the insured had on three or four different occasions consulted Dr. W. O. Langdon professionally and received medical treatment. Once in the year 1898 for an attack of erysipelas, and two or three times subsequently for attacks of biliousness. These attacks of illness were of short duration, and in each instance the insured was discharged by his physician as being well.

The questions whether or not the insured knowingly and understandingly assented to the answers as written by appellant's solicitor Becker and whether or not such answers if made by the insured were material

to the risk, were submitted to the jury by the instructions given at the request of the respective parties, and the verdict of the jury upon these issues must, in this case, be regarded as conclusive.

To the question, "What is your present use of liquors and narcotics?" the insured answered, "Drink occasionally." It was evidently contemplated by appellant that if the answer of an applicant for insurance disclosed that he used intoxicating liquors or narcotics, he should further state the amount and kind used and whether daily. If appellant desired further information as to the habits of insured with respect to the use of intoxicating liquors, it should have insisted upon a full and complete answer to the question. Having failed to do so, and having issued its certificate, appellant must be held to have waived any further answer to the question. Triple Link Ass'n. v. Froebe, 90 Ill. App. 299. Unless it shall be held that any use by the insured of intoxicating liquors was indulgence to excess, the evidence in the record does not justify finding that he did so indulge to excess. The insured gave his occupation as "saloon keeper," and stated that he drank intoxicating liquors occasionally. This was ample notice to appellant of insured's habits in that regard, and it cannot be heard to say, in the absence of proof to the contrary, that the occasional use by the insured of intoxicating liquors was excessive, within the meaning of the application, because any use of liquor by him tended to aggravate his liver trouble and induce bilious attacks.

The evidence tends to show that after the certificate was issued to the insured, he was notified by an agent of appellant that the monthly assessment due on such certificate would be called for at the insured's residence or place or business and collected by the regular collector of appellant; that in pursuance of such notice a collector employed by appellant did call at the residence of the insured on the 21st day of each month prior to February, 1904, for such purpose;

that upon one occasion the insured was absent from home when the collector called for the assessment and the assessment was paid on the following day at the office of appellant, and was accepted by appellant without protest or objection as to the time of payment. The evidence is conflicting as to whether a collector of appellant called at insured's residence to collect the assessment due February 21, 1904. If appellee's statement that she was informed by appellant that it did not then have a collector and that all assessments must be paid at the office, be true, it is strongly corroborative of appellee's contention that appellant's collector did not call at the residence of the insured for the purpose of collecting the assessment due February 21, 1904. If, by the statements and conduct of appellant, the insured was given to understand and induced to believe that a collector would call at his residence to collect the assessments as they became due, and that, if, for any reason the assessments were not paid when called for by the collector, the insured might pay the same at the office of appellant, without incurring a forfeiture of his certificate, and the insured relied upon such statements and conduct of appellant, appellant, by failing to send a collector to collect the assessment due February 21, must be held estopped to declare a forfeiture of the certificate for failure to pay the assessment on that day. In Conductors' Ben. Ass'n. v. Tucker, 157 Ill. 200, it is said: "Where a life insurance policy provides for a forfeiture for the non-payment of the annual premium on or before a specified time, such provision is for the benefit of the insurance company, and the company has the right to waive the forfeiture and dispense with a prompt payment of the premium at the time when it is due. Unless the circumstances show a clear intention to declare a forfeiture, it will not be enforced. Where the practice of the company, and its course of dealing with the insured, and others known to the insured, has been such as to induce a belief that

128    APPELLATE COURTS OF ILLINOIS.

VOL. 130.]    Perkins v. Reservoir Pk. Fish. & Boat. Club.

so much of the contract as provides for a forfeiture in a certain event will not be insisted upon, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief.''

The question, whether or not appellant waived a forfeiture of the certificate, was fairly submitted to the jury, and we are not disposed to interfere with its finding upon that issue.

It is, however, insisted on behalf of appellant that the insured's application for reinstatement was such an acknowledgment by him of the forfeiture of his policy as estops appellee from asserting to the contrary. If the certificate was not in fact forfeited for a failure on the part of the insured to pay his assessment, we do not think his application for reinstatement should be held to produce such forfeiture. To so hold, would, in effect, create a ground of forfeiture not contemplated by the contract of insurance. If there was no forfeiture in fact appellant could have been in no manner misled to its injury by the insured's statements in his application for reinstatement, that he was then in good health, and not afflicted with any disease or sickness.

Finding no substantial error in the record, the judgment will be affirmed.

*Affirmed.*