FLORENCE FUSCO *vs.* GRAND LODGE OF CONNECTICUT OF THE SONS OF ITALY IN AMERICA.

Third Judicial District, New Haven, January Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

Where a grand lodge maintains a mortuary or death-benefit fund, consisting of initiation fees and dues paid by the members of subordinate lodges, and issues directly to such members certificates of membership in the fund, their rights in and to the fund are to be determined in the light of the provisions of the certificate and the by-laws of the grand lodge; and where the by-laws of the grand lodge are in conflict with those of the subordinate lodges, the former prevail.

A provision that a member "who does not pay" or "who fails to pay" his dues for a given period, shall be automatically suspended, contains a clear implication that a member may retain his full rights by paying his dues at any time within such period.

If there are two conflicting versions of the by-laws in different languages, that which is more favorable to the member will be adopted.

A "period of grace" may be ordinarily defined as a designated time allowed beyond the date when an obligation is strictly due.

In the present case, the defendant's by-laws provided that any member who had paid his dues regularly for three years "shall

enjoy a period of ninety days grace and if he dies within said period, the beneficiary shall be paid just the same after deducting the amount due." The defendant contended that this provision operated in favor of the member only if he died within the ninety-day period and that it did not confer upon a living member the power to retain his membership in good standing by paying his dues within ninety days. *Held* that the construction urged by the defendant was too narrow; and that, therefore, the plaintiff, whose husband had paid his dues shortly before the end of the ninety-day period and had died shortly after its expiration, was entitled to recover as his beneficiary.

The decedent made his belated payment of dues to the secretary of his subordinate lodge who accepted the money, but informed him that he had been automatically suspended and that it would be necessary for him to present an application for reinstatement, together with a medical certificate of good health at the next meeting of the lodge, which the decedent agreed to do. *Held* that the decedent's rights as a member in good standing, which he had retained by making his payment within the period of grace, were in no way affected by his acquiescence in the erroneous instructions given him by the secretary.

Argued January 20th—decided February 23d, 1926.

ACTION to recover the amount of a death-benefit alleged to be due from the defendant, a fraternal benefit society, brought to the Court of Common Pleas for New Haven County and tried to the court, *Booth, J.;* judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Peter Trenchi,* with whom was *Frank Crapanzano,* for the appellant (defendant).

*Daniel D. Morgan,* with whom was *Philip Pond,* for the appellee (plaintiff).

MALTBIE, J. This action was brought to recover certain benefits alleged to be due upon the death of one Antonio Fusco, who had been a member of the defendant, a fraternal benefit society. The society had established a mortuary fund out of which such

benefits were paid and which was maintained by initiation fees and yearly dues paid by the members of the subordinate lodges. Fusco was a member of a subordinate lodge of the order on September 10th, 1920, and had thereafter paid his dues to the mortuary fund in quarterly instalments, as prescribed in the by-laws of the order, until April 1st, 1924. On that day an instalment became due which he did not pay. On June 26th, 1924, he saw the secretary of the subordinate lodge and offered to pay his dues. The secretary stated that he could not accept them from him, because he was not in good standing with the mortuary fund. Fusco then offered to leave the amount of the dues with the secretary, and promised to bring in a medical certificate of good health to accompany an application for reinstatement, to be made at the lodge meeting on July 6th following. The secretary accepted an amount sufficient to pay not merely the instalment due on April 1st, but also that due on July 1st, but indorsed the payment on Fusco's book as of July 6th, 1924. Fusco had always paid his dues to the secretary of his lodge, who had accepted and forwarded them to the proper officer of the defendant, and no question is made but that the secretary was properly authorized to receive and forward them. Fusco died July 1st, 1924.

The by-laws of the order governing the mortuary funds are printed for the benefit of its members both in Italian and English, but no discrepancy is claimed between the two versions, except in one respect hereafter noted. Under the by-laws as revised by the Grand Lodge of the order in 1923, and in effect when Fusco died, they contained the following provisions. The fund is administered by the Grand Lodge of the order, but all members of subordinate lodges must become members of it, and any member losing his good

standing forfeits also all rights of membership in his subordinate lodge. The central office of the fund issues to each member a certificate or diploma of membership in the mortuary fund. Every member is required to pay a yearly quota to the fund; and Article 23 states that this quota "should be paid yearly in advance, however it may be paid" in quarterly instalments on the first days of January, April, July and September. Article 24, as printed in Italian, literally translated, reads as follows: "The member who does not pay his annual or quarterly dues as per Article XXIII, for a period of sixty days from their due date, loses his good standing, and is automatically suspended from (the enjoyment of) any benefit, and in case of death he forfeits all his rights, the only right left him being that of the ninety days grace under his enrollment certificate, if he is entitled to it." In the English version Article 24 appears in this form: "A member who fails to pay the quota specified in the preceding article for a period of sixty days from the due date, becomes automatically suspended from the mortuary fund, and in the event of a death is deprived of every right to any of the benefits mentioned. If the member comes within the ninety-day period of grace specified on the certificate of diploma of membership, suspension of all benefit, as above, shall take place automatically upon being ninety days in arrears in the payment of the said quota." Article 25 provides that a member who has been automatically suspended for nonpayment of dues in accordance with the preceding section may be reinstated by paying all arrears of dues, and filing a proper medical certificate, the reinstatement to become effective upon notice to him from the central office. The certificate of membership which had been issued to Fusco contained this provision: "Period of Grace. The holder .

of this certificate who is in good standing with his payments for a period of three years from the date of his enrollment and falls in arrears, shall enjoy a period of ninety days grace, and if he dies within said period the beneficiary shall be paid just the same after deducting the amount due." The by-laws of the subordinate lodge contained a provision that a member is considered in good standing when he is not in arrears more than three payments, including the payment of the current month, it being the purpose of the by-law, the finding states, to provide that the period of arrearage begins with the first day of the fourth month after that which is referred to as the last payment. The lodge by-laws also included the following: "To be within the rights conferred by the mortuary fund each member must pay his contributory dues monthly. Failing to do this he loses his good standing. A member who has lost his good standing, or has resigned, or has been cancelled from the rolls of the mortuary fund, or has resigned from or has been cancelled from the rolls of, or has been suspended by, the lodge, loses every right in the mortuary fund, and forfeits to it everything that he may have paid."

The nature of the dues referred to in these provisions of the by-laws of the subordinate lodge is not clear from reading them and the record throws no light upon the question. If the amounts each member was required to pay into the mortuary fund are intended, it is obvious that the provisions are not in harmony with the by-laws of the Grand Lodge. The mortuary fund was the creature of the Grand Lodge, and Fusco's certificate of membership was issued by it; his contractual relationship was with the Grand Lodge; *Fawcett* v. *Iron Hall,* 64 Conn. 170, 184, 29 Atl. 614; and where its by-laws conflict with those of the subordinate lodge, the former must prevail. On

the other hand, if the dues referred to in these provisions are dues to be paid by members to the subordinate lodge in addition to the quotas paid into the mortuary fund, the record fails to disclose that Fusco was in arrears as to them. We disregard, then, the by-laws of the subordinate lodge and determine the plaintiff's rights in the light of those of the Grand Lodge and the provisions of the certificate of membership issued to Fusco. *Kane* v. *Knights of Columbus*, 84 Conn. 96, 104, 79 Atl. 63.

Article 23 specifies that the yearly quota "should be paid" in advance and fixes dates for the payment of quarterly instalments. Neither in it, nor elsewhere in the by-laws, are any penalties provided for a failure to pay strictly as provided therein. Indeed, only in Article 24 are there to be found any provisions for forfeiture of rights by reason of nonpayment of dues. In that article, in both versions, it is provided, in the first part, that a member who fails to pay his dues for a period of sixty days after they are due is automatically suspended, and in case of his death forfeits all rights to any benefits. The phrase, "who does not pay," or "who fails to pay," his dues "for a period of sixty days," contains a clear implication that a member may pay them at any time within that period and thereby retain his full membership in the order. That this is the correct interpretation is made sure by the provisions of the succeeding article, which permit an application for reinstatement by a member who "has been automatically suspended in accordance with the preceding article, for nonpayment of quotas," for the need of reinstatement is made to run, not from the time at which a quota was strictly due, but from the expiration of sixty days thereafter. A member may retain his full rights of membership by paying his dues at any time within the sixty-day period.

In the English version, the concluding portion of Article 24 discloses a clear intent that, in place of the right to pay within the sixty-day period open to all members, certain members have the right to pay within a period of ninety days. Not merely does this follow from the general relationship of the two parts of the article, but it is specifically stated that "the suspension of all benefits as above" takes place only at the end of the ninety days. If there is a conflict between these provisions of the English version and those of the Italian version, we would adopt those of the English version as controlling, because they are the more favorable to the plaintiff. *Estes* v. *Local Union No. 43,* 90 Conn. 426, 431, 97 Atl. 326; *Moulor* v. *American Life Ins. Co.,* 111 U. S. 335, 4 Sup. Ct. 466; *Northwestern Mut. Life Ins. Co.* v. *Hazelett,* 105 Ind. 212, 215, 4 N. E. 582. But we cannot see that the Italian version, properly interpreted, brings us to a different conclusion. After providing for the suspension of a member failing to pay his dues within the sixty-day period, it continues: "the only right left him being that of the ninety days grace under his enrollment certificate, if he is entitled to it." The paragraph of the certificate in question is entitled "Period of Grace," and provides that any member coming within it "shall enjoy a period of ninety days grace," and that if he dies within that period, death benefits shall be paid with a deduction for unpaid dues. It is too narrow a construction of this provision to say that it is meant to be operative only where a member, being in arrears, dies within the ninety-day period. Had that alone been intended, it would have been natural to couch the provision in simpler language. A period of grace ordinarily means a time allowed beyond that at which an obligation is strictly due; *Taylor* v. *Provident Savings Life Assur. Soc.,* 134

Fed. 932, 935; *Mercer* v. *South Atlantic Life Ins. Co.*, 111 Va. 699, 701, 69 S. E. 961; and it would be natural so to read it in this case. The concluding provision permitting a recovery in case of death within the ninety-day period is not to be read as restricting the preceding clause, but as granting a privilege additional to the right to preserve membership by the payment of arrears of dues within that period. That right is, by reference, incorporated into the Italian version of Article 24. Under either version, then, a member may continue his good standing in the order, by paying his dues within the ninety-day period, if he is within the purview of the provision for a "Period of Grace" in his certificate of membership.

Fusco had been a member of the order sufficiently long to be entitled to the advantage of that "Period of Grace." He had a right to pay the instalment which was due April 1st, when he met the secretary on June 26th. He did give him the money, and the rights which accrued to him by that payment were not lost because the secretary misinformed him as to his position and he acquiesced. *District Grand Lodge No. 4* v. *Cohn,* 20 Ill. App. (Bradw.) 335, 342; *Foresters of America* v. *Hollis,* 70 Kan. 71, 74, 78 Pac. 160; *Supreme Council, A. L. of H.* v. *Orcutt,* 119 Fed. 682, 687; *Sterling Life Ins. Co.* v. *Rapps,* 130 Ill. App. 121.

There is no error.

In this opinion the other judges concurred.