### RAILWAY MAIL ASS'N v. MOORE.

(Circuit Court of Appeals, Fourth Circuit. October 19, 1926.)

No. 2514.

1. **Insurance** ⬦⟹751(1)—Members of mutual benefit association must take notice of by-laws requiring payment of regular assessments, but are entitled to special notice, if so provided in by-laws, or if amount and dates are uncertain.

Members of mutual benefit association must take notice of by-laws providing for payment of assessments at stated times, but failure to pay cannot work forfeiture, if special notice required by by-laws is not given, or if amounts and dates of assessments are uncertain.

2. **Insurance** ⬦⟹751(1).

By-laws of mutual benefit association held to contemplate special notice of regular and special assessments.

3. **Insurance** ⬦⟹825(2).

Evidence relative to mailing papers containing notice of assessment in wrappers prepared on automatic addressograph machine held to present by mutual benefit association jury question whether notice of special assessment was given.

4. **Insurance** ⬦⟹817(2).

Under Code W. Va. c. 125, §§ 61–66, insurer, asserting nonpayment of assessment, has burden of showing that notice contemplated by by-laws of mutual benefit association was given.

5. **Insurance** ⬦⟹817(2).

Generally, if mutual benefit association pleads failure of insured to pay assessment, it has burden of proving levy and notice in manner prescribed by its rules.

6. **Insurance** ⬦⟹751(2).

Mailing notice of assessment for mutual benefit association to insured's address last known to general secretary was insufficient, where financial secretary of particular branch had actual knowledge of a later address.

7. **Insurance** ⬦⟹146(3).

Courts do not favor forfeiture, and where doubts arise will adopt construction of policy most favorable to insured, and which will prevent annulment.

In Error to the District Court of the United States for the Northern District of West Virginia, at Elkins; William E. Baker, Judge.

Suit by Clara Moore against the Railway Mail Association. Judgment for plaintiff, and defendant brings error. Affirmed.

H. G. Kump, of Elkins, W. Va., for plaintiff in error.

D. H. Hill Arnold, of Elkins, W. Va. (A. M. Cunningham, of Elkins, W. Va., on the brief), for defendant in error.

Before PARKER, Circuit Judge, and WEBB and SOPER, District Judges.

SOPER, District Judge. Anthony Moore lost his life on June 10, 1922, at Colcord, W. Va., in a fire which destroyed the hotel in which he was a guest. His occupation was that of a railway postal clerk, and he was the holder of a certificate or policy of insurance in the Railway Mail Association, a corporation organized for the mutual protection and benefit of the members and their beneficiaries. The certificate provided that, if the

death of the holder should result from accidental injuries, the association would pay $4,000 to the mother of the insured, who was named as beneficiary. After his death, demand for that amount having been made and refused, suit was brought by the beneficiary to recover it. The association filed a general issue plea to the declaration, and also pleaded specially that the policy had become forfeited because of the failure of the certificate holder, notwithstanding due notice, to make payment of assessment No. 142, amounting to $2.75, levied by the association on April 20, 1922, and payable in 30 days thereafter. The plaintiff filed a general replication, and also replied specially, in effect that due notice of the assessment had not been given to the policy holder, as required by the laws of the association.

The issues of payment and of notice were left to the jury, under the instructions of the court, and a verdict was rendered for the amount payable under the policy, in case of accidental death, with interest. The defendant brought its writ of error to this court, complaining of certain errors in the court's instructions. Briefly stated, the contention of the plaintiff in error, hereinafter called the defendant, is that the court should have instructed the jury to render a verdict for the association, because there was no evidence to justify a verdict for the plaintiff. There was, in fact, no pretense on the part of the plaintiff that the assessment was paid, and, had this been the only issue, the court might well have directed a verdict for the defendant. But the case turns on the question of notice, as to which the assignments of error raise two points: (1) Whether, under its laws, the association was required to give a special notice of assessment No. 142; and (2) whether the burden of proof as to the fact of notice was on the plaintiff or on the defendant. The further question arises on the record—whether, if it be admitted that notice was sent to the policy holder in the manner claimed by the defendant, such notice was a sufficient compliance with the constitution and by-laws of the association.

The determination of these questions depends in part upon the constitution and by-laws of the association. The relevant provisions were substantially as follows: It was provided that each assessment should be paid within 30 days from the date on which it was levied, and on the failure of any member to make such payment he should be automatically suspended without notice, and he, or any person claiming through him, should not be entitled to any benefits from the association.

At least one assessment each two months was to be levied by the secretary, until such time as the benefit fund should reach one-fourth of 1 per centum of the total contingent death liability, and thereafter, whenever the benefit fund was less than one-fourth of 1 per centum, as above, an assessment was to be levied by the secretary. The regular assessments, to provide for the benefit fund, a per capita tax, and certain additional dues, were to be levied at the rate of $2.75 an assessment in the months of June, August, October, December, February, and April. Provision was also made for the distribution of these assessments to the several purposes for which they were raised, and it was specified that all of the assessment of $2.75, to be levied in the month of April, was to be credited to the per capita tax and certain dues independent of the benefit fund, while all or a part of each of the five remaining assessments during the year were apportioned to the benefit fund. It was further provided that extra assessments for the benefit fund should be levied at such times as the secretary might deem necessary, and that after notice they should be collected in the same manner as the regular assessments.

There were other specific provisions in regard to notice of assessments. It was provided, in terms applicable as well to regular as to extra assessments, that, upon notice of an assessment being issued, it should be the duty of the secretary immediately to collect the same; that it should be the duty of each member to notify the secretary in writing of any change in his post office address; and that the mailing of notice of assessment to his last known address should be considered legal notification, and if such notice were printed in a circular, or in the regular authorized paper of the association, and mailed to such address, it should constitute a due and legal notice.

The members, including the certificate holder, were furnished, not only with a copy of the constitution and by-laws, containing these rules, but also with a membership card, which was issued on or about the 1st of July in each year. The card issued July 1, 1921, gave the dates and amounts of the regular assessments payable every two months at the rate of $2.75 from August, 1921, to June, 1922. The card also indicated, however, that the assessments were subject to change by the National Council, and that the schedule, while showing the probable date of levy of assessment, was also subject to change, in that an unusual number of accidental deaths might necessitate one or more additional assessments during the year.

[1] The association contends that, since the

policy holder had in his possession copies of the rules shown by the by-laws and the membership card, he was advised that a regular assessment would be levied in April, 1922, and was therefore entitled to no further notice. It is well settled that, if the laws of such a society provide that assessments shall be paid at stated times, the members are bound to take cognizance thereof and other notice is not necessary; but if the laws provide that members shall be notified of assessments, or if the amounts or the dates of payment are uncertain, the failure of a member to pay cannot serve as a basis for forfeiture, unless he has been given special notice. 29 Cyc. 171; Bacon Life and Accident Insurance (4th Ed.) § 486; 32 C. J. 1303, 1304; 3 Cooley's Briefs on Insurance, 2281 et seq.

[2] A consideration of the by-laws of the association in this case leads to the conclusion, not only that the amount and the date of the assessment were uncertain, but also that special notice of all assessments was contemplated. The six so-called regular assessments aggregated $16.50 per year, of which $10 was intended for the benefit fund. It was specifically declared that regular assessments for the benefit fund should be levied until the fund reached a certain amount, and thereafter whenever the fund fell below that amount. It is true that the April assessment was intended for other purposes, but it was so connected with the regular bimonthly assessment of $2.75 in one scheme for financing the body as to be dependent upon the maintenance of the whole schedule. As a matter of fact, prior to the death of the insured the benefit fund had reached one-fourth of 1 per centum of the contingent death liability and the provision for regular assessments was no longer applicable; so that, although assessments were levied every two months, they seem to have been in reality extra assessments, levied in the discretion of the officers of the association. In any case, it is quite clear, from the specific directions as to notice, that the by-laws contemplated special notice in every case; and this interpretation is confirmed by the practice of the body which gave notice by mailing a printed publication to the members at or about the time that each assessment was levied.

[3] It becomes necessary, therefore, to determine the second point raised by the defendant, namely, upon which party to the cause the burden of proof as to special notice must rest. No evidence as to notice was offered by the plaintiff. The defendant association offered evidence tending to show the following facts: The editor of the authorized publication of the association was directed to insert therein a notice of the April assessment, and the notice was accordingly published and the paper was mailed to the membership a few days prior to the 20th of April, 1922. The testimony did not conclusively show that a copy of the paper was mailed to Anthony Moore. The editor of the paper showed that the wrappers were prepared in his office on an automatic addressograph machine, and that the name of each member, including that of the policy holder, appeared upon a stenciled printing plate, which was fed automatically to the addressograph. The operator of the addressograph was not produced. The wrappers, after being addressed, were sent to the publishing company, which printed the journal, to be mailed. No one from the printing establishment was produced as a witness. This evidence undoubtedly tended to show that a special notice was mailed to the policy holder; but it cannot be said that it was so positive and convincing as to justify an instruction to the jury, on the part of the trial court, to find as a fact that special notice was given. It was a question properly left to the jury to determine.

[4] But the association contends that the burden of proof was on the plaintiff to show that the notice contemplated by the by-laws was not given, and, since the plaintiff offered no evidence on this point, it was the duty of the court to instruct the jury to find a verdict for the defendant. The argument that the burden of proof to show lack of due notice was upon the plaintiff is based on certain provisions of the West Virginia Code. Sections 61 to 66 of chapter 125 of the Code relate to rules and pleadings in insurance cases. A simple form of declaration is provided, wherein the essential averments are that the defendant owes the amount of the policy to the plaintiff because of the death of the insured at a time and place named. Section 64 provides that the defendant may plead generally that it is not liable to the plaintiff on such a declaration; "but if, in any action on a policy of insurance, the defense be that the action cannot be maintained because of the failure to perform or comply with, or violation of any clause, condition or warranty in, upon or annexed to the policy, * * * the defendant must file a statement in writing specifying by reference thereto, or otherwise, the particular clause, condition or warranty in respect to which such failure or violation is claimed to have occurred."

These sections were construed in the case

of Rosenthall Co. v. Scottish Union Insurance Co., 55 W. Va. 238, 46 S. E. 1021, wherein it was held that if a common-law declaration is used, the plaintiff must aver and prove compliance with conditions precedent to the contract of insurance. But, if the statutory form of declaration is used, it is unnecessary for the plaintiff to allege and prove such .compliance, unless the defendant files a statement of particular defense as provided in section 64, stating wherein the plaintiff has failed to observe the policy. Then the plaintiff must prove such observance. The court said that the statute does not shift the burden of proof, and that it is a remedial statute, to be liberally construed, so as to save the plaintiff from the necessity of proving compliance with all the conditions precedent in the policy. The Supreme Court of Appeals of West Virginia has also applied this statute in a number of other cases, including Adkins v. Globe Fire Insurance Co., 45 W. Va. 384, 32 S. E. 194, and Cooper v. Insurance Co., 98 W. Va. 655, 127 S. E. 511. In the former it was held that if the defendant, under section 64, pleaded that the plaintiff had not made proof of loss within 60 days as required by a fire insurance policy, the burden of proof was upon the plaintiff to show compliance with this condition precedent, and in the latter case, where the defendant pleaded that the plaintiff had not complied with the iron safe clause in a fire-insurance policy, it was held that the burden of proof was likewise upon the plaintiff to show compliance with this condition.

On the other hand, it is clear that the burden is not on the plaintiff in every insurance case in West Virginia to disprove the specifications of a particular defense filed by the defendant under the West Virginia statute. It was held in Logan v. Provident Savings Life Assurance Society, 57 W. Va. 384, 50 S. E. 529, that the burden of proof remained with the defendant to prove the falsity of certain answers made by the plaintiff in his application for insurance, although the defendant in a specification of particular defense alleged that the answers were false. The Rosenthall Case was considered, and it was pointed out that, since the performance by the plaintiff of a condition precedent to recovery was not involved, the general rule in insurance law should be applied, and, the truth of the answers in the application having been put in issue by the company, the burden was upon it to establish its contention. Manifestly the West Virginia statute was not intended to add to the difficulties of the insured in an action on the policy, but

rather to make his path more smooth; nor was it intended to relieve the defendant from the burden of proving those defenses which, under the law of insurance, it is incumbent upon the defendant to maintain.

[5] The general rule is that, if a mutual benefit association pleads failure of an insured to pay an assessment, the burden is upon it to prove levy of the assessment, and notice to the members in the manner prescribed by the rules of the society. Mutual Reserve Fund Life Ass'n v. Hamlin, 139 U. S. 297, 11 S. Ct. 614, 35 L. Ed. 167; 29 Cyc. 233; 33 C. J. 110; Bacon Life and Accident Insurance (4th Ed.) § 645. In the case at bar, the matter in issue was peculiarly within the knowledge of the defendant, since it was sufficient for the defendant to show that notice to the policy holder was mailed. There was no error in the refusal of the court to give a binding charge in favor of the defendant, or to charge the jury that the burden was upon the plaintiff to show lack of sufficient notice.

[6] For another reason, the defendant was not injured by the rulings of the court. The evidence offered by the defendant shows that the notice of assessment which was given to the policy holder did not comply with the requirements of the constitution and by-laws. The provision was that it should be sufficient to publish notice of the assessment in the regular authorized paper of the association and to mail a copy of the paper to the last-known post office address of the member. The evidence tended to show that publication in the organ of the association was made, and that a copy was mailed to the Cincinnati address of the deceased. This address was contained on a postal card received from the insured November 17, 1921, and was the only address known to the general secretary of the association. The insured, however, had actually changed his address from Cincinnati to Colcord, W. Va., and this change was known to the financial secretary of the Cincinnati branch, whose duty it was to make collections of dues and assessments and to send them to the general secretary. The insured had been delinquent in the payment of assessment No. 141, which was levied February 20, 1922, and the financial secretary of the Cincinnati branch, having learned of the change of address, sent a delinquency notice to the insured at Colcord and in reply received payment of the assessment.

[7] The particular provision of the constitution upon which the defendant relies in this connection was as follows: "It shall be the duty of each member of this association to

notify the secretary (meaning the general secretary) in writing of any change in his post office address and the mailing of notice of assessment to a last-known address shall be considered notification." Other provisions, requiring the mailing of notice of assessment to a last-known address of the member, have already been noted. The defendant contends that it was the duty of the member to give written notice of his change of address, and until this was done it was lawful for the association to mail all notices of assessment to the address indicated by the member's last communication in writing. This contention would be sound, if it were not for the fact that the association had actual knowledge in the case at bar that the member's address had been changed. The failure of the member to give notice of a change of address is not of itself ground for forfeiture. Mutual Reserve Fund Life Ass'n v. Hamlin, supra. And, since the new address was in the possession of an officer whose duty it was to collect the assessment, it must be held to be the one last known to the association. The rule is that courts do not favor forfeiture, and, where doubts arise as to the proper construction of an insurance contract, that view should be adopted which is most favorable to the insured and will prevent an annulment of the policy. Mutual Life Insurance Co. v. Hurni Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Hartford Life Insurance Co. v. Unsell, 144 U. S. 439, 12 S. Ct. 671, 36 L. Ed. 496; Pleasants v. L. E. Mutual Insurance Ass'n, 70 W. Va. 389, 73 S. E. 976, Ann. Cas. 1913E, 490. This salutary rule is most appropriate to the case at bar. A mutual beneficial association, which seeks to avoid the payment of an obligation of $4,000 to the beneficiary in a policy on the sole ground that an overdue assessment of $2.75 remained unpaid at the death of the insured, may, with justice, be required rigidly to observe the obligations imposed upon it by its own laws.

The judgment of the District Court is affirmed.